## Insurance Co. *v.* Connelly.

### (*Nashville.* February 3, 1900.)

1. FIRE INSURANCE. *Policy avoided by insured's fraud.*

   A fire policy insuring a residence for $500, and its contents for $400, and containing a provision that the "entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning the insurance or the subject thereof, whether before or after the loss," is avoided *in toto.* both as to the residence and its contents, by a willfully false and fraudulent statement of the insured in his proofs of loss, relating alone to the contents of the house. (*Post, pp. 94–99.*)

   Cases cited and approved: 28 Grattan, 508 (S. C., 26 Am. Rep., 373).

   Cited and distinguished: Hobbs *v.* Ins. Co., 1 Sneed, 444; Ins. Co. *v.* Scales, 101 Tenn., 629.

2. SAME. *Insured repelled in equity on account of his fraud.*

   An insured cannot recover in equity upon a fire policy, where he comes into Court confessing that he has made willfully false and fraudulent statements in his proof of loss. He will be repelled by the maxim that "he that doeth inequity shall not have equity." (*Post, pp. 99, 100.*)

---

FROM DAVIDSON.

---

Appeal from Chancery Court of Davidson County. H. H. COOK, Ch.

Insurance Co. *v.* Connelly.

STOKES & STOKES for Insurance Company.

W. D. COVINGTON for Connelly.

BEARD, J.   This suit grows out of the issuance by the complainant to the defendant of a policy of insurance, which undertook for a round sum or entire premium, to indemnify the defendant against loss by fire, first, of her dwelling house, valued at $500, and, second, of its contents, consisting of household and kitchen furniture, valued at $400.   While the policy was in force, a fire occurred destroying the building and all it contained.   In due time the assured made out her proofs of loss, and having made affidavit to their correctness, submitted them to the complainant and demanded payment, which was refused, upon the ground that the defendant was seeking to perpetrate a fraud upon the insurer, by claiming for a much larger amount of personal property than was destroyed.

Meeting with this refusal, the assured instituted a common law action to recover on the policy the value of the loss which she alleged had been sustained by her.   Thereupon the complainant filed this bill charging fraud on the part of the assured and asking that the Chancery Court call in and cancel the policy.   The defendant answered the bill, denying all fraud, and with her answer filed a cross bill setting up her policy, averring

the total loss of real and personal property to the face value of the policy, that proper proofs of loss had been made, and praying a decree against the company. After answer to this cross bill, the cause was tried by the Chancellor on an agreed statement of facts, which contained, along with other stipulations, which need not be mentioned, the following: "That the statements in the proofs of loss and other papers, made under oath by defendant with respect to the personal property insured, were fraudulently and falsely made, with the actual intent to deceive complainant."

The policy upon which, in the face of her admission of a purpose to defraud the insurer, the cross complainant seeks to recover in a court of conscience, contains the following unambiguous clause: "This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning the insurance or the subject thereof, whether before or after the loss."

The cross complainant through counsel concedes that under this condition her effort at fraud, accompanied by false swearing with regard to the personal property, precludes a recovery for its loss, but insists that as she dealt honestly with the company so far as the building was concerned, she is entitled to a decree for its value. This contention is made upon the theory that the policy

in question is a severable or divisible contract, and covering as it does two items of property with distinct valuations, it is to be treated as if two separate policies had been issued, one insuring the building and the other its contents, each containing the clause or condition set out above. From this it is argued that fraud, such as is here admitted, as to one of these policies, would not prevent a recovery for an honest loss on the other. While the earlier cases were possibly harmonious in holding that a policy covering a number of pieces of property for one entire premium was indivisible, yet it may be granted that the tendency of the more recent authorities is to treat such a contract as separable or divisible so far as the separate subjects insured are concerned. This view has been accepted as one more consistent with the intention of the parties, or less likely to produce inequitable results to the insured, by affording the Courts an opportunity to avoid forfeitures for innocent mistakes often made by the assured. The case of *Speagle* v. *Insurance Co.*, 97 Kentucky, 646, serves as an illustration of a class to which this principle of construction has been applied. There several houses were insured in the same policy for a common premium but with separate valuations. The policy contained the usual clause, avoiding the insurance should the property become vacant. When destroyed by

Insurance Co. *v.* Connelly.

fire some of these houses were vacant and others were not. In a suit on the policy, the Court held the contract was so far severable that the insured could recover for those not vacant, but not for those vacant. In line with this are *Insurance Co.* v. *McKinley,* 14 Texas App., 7; *Insurance Co.* v. *Sanders,* 53 Kan., 623; *Insurance Co.* v. *Tilley,* 88 Va., 1024; *Quarier* v. *Insurance Co.,* 10 W. Va., 529; *Clark* v. *New England Insurance Co.,* 6 Cush., 342; *Hartford Insurance Co.* v. *Walsh,* 54 Ill., 164.

But it does not follow that because such a policy is severable, that it is to be taken as if separate and distinct policies, covering each a separate piece of property, were issued at the same time. While it is an apportionable contract, yet that it is not two distinct and separate contracts is certain not only from the fact that the premium paid is entire, but also from this consideration, that separate suits could not be maintained where all the property insured had been destroyed by one and the same fire. In such an event a recovery for the loss of one of the subjects of insurance there can be no doubt would bar a recovery in an independent suit for the loss of another subject of the same insurance, upon the principle that a plaintiff cannot split a single cause of action into parts. *Hartford Fire Insurance Co.* v. *Davenport,* 37 Mich., 609.

In none of the cases where the severability of such a contract is maintained, does it appear that fraud was perpetrated or attempted, as in the present case. In *Coleman* v. *Insurance Co.,* 49 Ohio St., 310 (S. C., 34 A. S. R., 573), it is the clear implication from the opinion of the Court that while divisble, fraud or misrepresentation in the inception as to one piece of property would avoid the whole contract. The same implication is found in *Phoenix Insurance Co.* v. *Lawrence,* 4 Met. (Ky.) 9, and *Schuster* v. *Duchess County Insurance Co.,* 102 N. Y., 102. But the direct question was considered and determined in *Moore* v. *Virginia F. & Insurance Co.,* 28 Gratt., 508 (S. C., 26 A. R., 373). There a policy insured $2,000 on buildings, $1,000 on machinery, etc., and $2,000 on stock, and contained a clause providing that all fraud or false swearing as to the property so covered, on the part of the assured, should forfeit all claim under the policy. A loss having occurred the assured, in his proofs of loss, made a false and fraudulent statement as to the stock of grain, but not as to the other subjects of insurance, and the Court denied him a recovery as to any part of the loss.

In any contract of insurance the moral risk is an important element. At the inception, as well as in making up his statement after loss has occurred, the insurer is bound to repose great

confidence in the assured. At both periods in its history the law imposes, and in such policies as the present, the terms of the contract require, under the penalty of forfeiture of the entire interest, the utmost good faith. Where the assured is driven to the confession that an effort has been made by fraudulent artifices and false swearing to cheat the insurer as to one of the subjects, why may it not be reasonably supposed that fraud has perverted the whole? As is said by the Virginia Supreme Court in the case last referred to: "He may be so guilty, and the insurer have no means of proving such guilt. He may himself have been the author of the burning of which he complains, as he may have obtained the insurance for the very purpose of obtaining money by committing fraud and perjury in regard to one or more of the subjects insured. He was capable of either of these crimes, as he was capable of the crime which was proved upon him."

But beyond this, to permit the cross complainant, coming as she does with a confession of fraud and false swearing, to recover, would be in disregard of that fundamental maxim of equity, that "he that doeth inequity shall not have equity." It is true that this maxim has its proper limitation. It does not extend to any misconduct, however gross, which is unconnected with the matter of litigation, and with which the opposite party has

no concern, but it does control the administration of equitable remedies where the misconduct is in regard to, or at all events connected with, the subject of controversy, so that it has in some measure affected the equitable relation of the parties arising out of the same transaction. 1 Pomeroy's Eq. Jur., Sec. 399. We can conceive of no case that affords better scope for the application of this rule than the present.

It is proper to say that the cases of *Hobbs, etc., v. Insurance Co.,* 1 Sneed, 444, and *Insurance Co. v. Scales,* 101 Tenn., 629, give no support to the present contention of the cross complainant.

It follows that the decree of the Court of Chancery Appeals, dismissing the cross bill and making perpetual the injunction as prayed for in the original bill, is affirmed.