DE ROSSETT HAT CO. *v.* LONDON LANCASHIRE FIRE INS. CO. *et al.*

(*Knoxville.* September Term, 1915.)

1. **APPEAL AND ERROR.** Presentation of grounds of review in court below. Necessity. Motion for new trial.

Under court Rule 5 (126 Tenn. 723, 160 S. W. ix), declaring that error occurring or committed on the trial of a case will not constitute ground for a reversal unless it be specifically stated in the motion for new trial, an assignment complaining of the overruling of defendant's objection to trial by jury cannot be reviewed where the objection was not made a ground in the motion for new trial. (*Post, p.* 205.)

Acts cited and constred: Acts 1901, ch. 141.

2. **INSURANCE.** Action on policy. Issues.

In an action on fire policies, where the insurers admitted liability, paying into the court the amounts of the policies and withdrawing their answers denying liability, so that the only thing left for trial was whether complainant was entitled to the statutory penalty for failure to pay within sixty days after demand, issues as to whether the fire was accidental are immaterial and are not to be submitted. (*Post, pp.* 205, 206.)

3. **APPEAL AND ERROR.** Review. Harmless error.

The submission of such immaterial issues and the receipt of considerable evidence thereon was prejudicial, for it placed the insurers in the attitude of affirming a state of facts which they could not hope to prove. (*Post, pp.* 206-208.)

Cases cited and approved: Cooper v. Bell, 127 Tenn., 142; Burton v. Farmers Association, 104 Tenn., 416; McElya v. Hill, 105 Tenn., 319; Crisman v. McMurray, 107 Tenn., 469; Pile v. Carpenter, 118 Tenn., 288.

Code cited and construed: Sec. 6285 (S.).

4. **EQUITY. Trial. Issues. Submission.**

Under Shannon's Code, section 6285, declaring that the issues shall be made up by the parties under the direction of the court and set forth briefly and clearly the true questions of fact to be tried, it is the duty of the chancellor to see that proper and material issues, and only such, are submitted to the jury, and he is in error when he submits to the jury an immaterial issue. (*Post, pp.* 206-208.)

5. **INSURANCE. Fire insurance. Penalties.**

Under Acts 1901, chapter 141, providing a twenty-five per cent. penalty if an insurance company refused to pay a fire loss within sixty days after demand shall have been made by the holder of the policy on which the loss occurred, a formal demand on the insurer after maturity of the policy is fixed according to its terms is necessary to entitle the insured to the penalty. (*Post, pp.* 208-213.)

Acts cited and construed: Acts 1901, ch. 141.

Case cited and distinguished: Insurance Co. v. Kirkpatrick, 129 Tenn., 55.

6. **INSURANCE. Fire insurance. Statutes.**

Acts 1901, chapter 141, providing a penalty of twenty-five per cent. for nonpayment of a fire loss within sixty days after demand, being a penal statute, must be strictly construed. (*Post, pp.* 208-213.)

7. **INSURANCE. Fire insurance. Contracts. Modification.**

An insurance contract, like any other contract, may be modified after it is made by express agreement of the parties. *Post, pp.* 208-213.)

8. **INSURANCE. Fire policies. Penalty.**

Fire occasioning a loss occurred on September 25, 1913. Proofs of loss were mailed November 1st of that year, the only demand for payment was by letter dated and mailed December 18th, and the original bills of complaint were filed on the 7th of the following January. The policies provided that loss should be payable sixty days after satisfactory proof of loss had been

DeRossett Hat Co. v. Fire Ins. Co.

received by the insurers. Acts 1901, chapter 141, provides a penalty of twenty-five per cent. in case an insurer fails within sixty days after demand to pay the amount due. *Held*, that the insured was not entitled to the penalty; suit having been begun a few days after the policy matured, and payment within sixty days after demand after maturity not having been refused. (*Post, pp.* 208-213.)

9. **ESTOPPEL. Claim under agreement.**

Where insured relied on a nonwaiver agreement with insurers, he cannot take advantage of an oral statement made by his adjuster and assented to by the adjusters of the insurers which contradicted the provisions of the policies preserved by the nonwaiver agreement. (*Post, pp.* 213-219.)

Case cited and approved: Electric Light Co. v. Gas Company, 99 Tenn., 371.

10. **INSURANCE. Fire insurance. Agreements.**

Where insured and insurers executed a nonwaiver agreement, a statement, made by insured's adjuster and assented to by those of the insurers, that such agreement would not delay payment of claims for fire loss more than five days at the utmost, does not show insured was entitled to payment within such time and furnish basis for recovery of the twenty-five per cent. penalty provided for by Acts 1901, chapter 141, in case of refusal of payment within sixty days after demand, where the policies did not require payment until sixty days after furnishing proofs of loss. (*Post, pp.* 219, 220.)

Acts cited and construed: Acts 1901, ch. 141.

---

FROM HAMILTON.

---

Appeal from the Chancery Court of Hamilton County to the Court of Civil Appeals, and by *certiorari* to

DeRossett Hat Co. v. Fire Ins. Co.

the Court of Civil Appeals from the Supreme Court.—
T. M. McConnell, Chancellor.

W. B. Miller and Thomas & Thomas, for plaintiff.
Sizer, Chambliss & Chambliss, for defendants.

Mr. Justice Buchanan delivered the opinion of the
Court.

The hat company, January 7, 1914, filed separate
bills against eleven insurance companies, including the
one above named, to recover on account of a single fire
loss the separate sum from each company for which
each was liable under a policy in force at the date of
the fire. Each of the bills prayed for a decree for the
sum named in the face of the policy, and interest there-
on, from December 6, 1913, together with the addition-
al sum of twenty-five per cent. of the amount of the
principal demand. The twenty-five per cent. demand
was based on chapter 141, Acts of 1901; but, before
the causes came on for trial, the defendant companies
had so amended their respective pleadings as to admit
the right of the complainant in each case to a decree
for the principal sum and interest thereon, and that
feature of the original demand made by each bill had
been eliminated from dispute by the admission afore-
said, and by payment into the registry of the court of
the sum in each case admitted to be due, and thereaft-
er the only matter in dispute between the complainant
company and each of the defendant insurance compa-
nies in each case was the right of the complainant to

recover that part of its original demand which was based on said act of 1901. At this juncture the eleven causes were consolidated, and issues were made up, and the consolidated causes were tried before the chancellor and a jury. The issues submitted to the jury, and the findings of the jury on each issue, were as follows:

"(1) Was the fire which occasioned the loss sued for accidental? Yes. (2) Was said fire due to, or occasioned by, the intentional, willful, or fraudulent act of the complainant? No. (3) Did such complainant make demand for payment of the policies sued on after the same became due and payable according to their terms? Yes. (4) Did defendants fail to pay the loss under said policies for sixty days after such demand, and prior to the institution of these suits? Yes. (5) Did defendants refuse to pay the losses under said policies, within sixty days after such demand, and prior to the institution of these suits? Yes. (6) Did the defendants, within sixty days after demand, made by complainant, and before suit was brought, pursue a course of conduct equivalent to a refusal to pay? Yes. (7) And if so, was such conduct thus pursued in good faith? No. (8) Was defendant's failure or refusal to pay the loss sustained by complainant in good faith? No. (9) Did such failure or refusal inflict additional loss, damage, expense, and injury upon complainant, and, if so, how much damage, expense, and injury did said failure and refusal to pay inflict on complainant, giving the amount of the same? Yes; $4842.20."

The chancellor concurred in the findings of fact by the jury, and decreed in favor of complainant in the sum named in answer to issue No. 9, together with interest on said sum, and for costs of the cause. Defendants in the consolidated cause moved for a new trial upon the following grounds: (1) Because of error by the court in submitting issues 1 and 2 to the jury; (2) because of errors in the admission and rejection of testimony to be specified on the hearing; (3) because the court failed and refused to grant the motion of defendants for peremptory instructions at the close of all the evidence; (4) because of error in the charge of the court, to be specified on the hearing; (5) because of the refusal of the court to charge in accordance with the written requests submitted on behalf of defendants; (6) because there was no material evidence to sustain said verdict; (7) because the verdict was so excessive as to indicate passion or prejudice on the part of the jury against the defendants. "Wherefore, and for other reasons to be assigned on the hearing, defendants move that said verdict be set aside and a new trial granted." The motion was overruled, and the defendants prosecuted their appeal to the court of civil appeals, where the decree of the chancellor was modified so as to disallow interest, but otherwise was affirmed.

The defendants have filed their petition for *certiorari* and assignments of error in this court, the writ has been granted, and argument allowed.

The first assignment of error in this court is that the court of civil appeals erred ''in overruling the objection of defendants to a trial by jury.'' No mention of this matter was made in the motion for a new trial in the chancery court, and therefore it is not a proper ground for a reversal of the decree of that court or the court of civil appeals. See Rule 5, 126 Tenn. (18 Cates), 723 [160 S. W., ix], and the cases cited thereunder.

The second assignment of error is that the court of civil appeals erred ''in failing and refusing to hold that issues 1 and 2 were irrelevant and immaterial, and should not have been submitted to the jury.'' Issues 1 and 2 have been set out supra. They were also set out in the petition for *certiorari*. Their submission to the jury was relied on as the first ground of the motion for a new trial in the chancery court, and the action of the chancellor on that ground of the motion was relied on as the second assignment of error in the court of civil appeals; so, the question is open in this court, and we think issues 1 and 2 were irrelevant and immaterial, and should not have been submitted to the jury. If the first or second answer filed by each of the defendant companies had been a part of the existing pleadings in the respective consolidated causes on July 22, 1914, when the issues were made up, the first and second issues above would have been material. But the first and second answers had been, by leave of court, withdrawn in each of the causes. The first answer was withdrawn in express terms when the second was

filed, and the second was withdrawn in express terms when the third was filed. The third answer was filed April 10, 1914, and it made no question as to how the loss was occasioned, and did not charge that it resulted by the act of the complainant, or in any other way which would invalidate the insurance; but, on the contrary, this answer confessed liability of the respondent for the full amount, and paid said sum into court. Therefore we hold that the first and second issues were not proper, were immaterial and irrelevant under the pleadings as they stood on July 22, 1914, when the issues were made up.

As above shown, each of the defendants in the consolidated causes, more than three months before the issues were made up, had voluntarily abandoned the dispute of fact involved in issues 1 and 2, and by so doing had confessed its inability to prove the affirmative of those issues, and made good its confession by payment into court of the principal demand and interest thereon. By the injection of these issues into the trial of the cause the jury must have been led to believe that the affirmative of them was insisted on by defendants, since they alone could profit by affirmative proof of issues 1 and 2, and thus the defendants were placed in the attitude of affirming before the jury a state of facts under each of said issues which they could not hope to prove, the contrary of which they had admitted, and the complainant was allowed, under the guise of disproving the affirmative of these issues, to introduce the greater part of the evidence in this large

transcript. The result could only have been mislead-
ing and prejudicial to the defendants' right to a fair
and impartial trial before the jury upon any material
issues of fact existing under the pleadings.

Section 6285 of Shan. Code provides:

"The issues shall be made up by the parties under
the direction of the court, and set forth briefly' and
clearly the true questions of fact to be tried."

This section, as construed by our cases, has been held
to mean that the duty is upon the chancellor to see that
proper and material issues, and only such, be submit-
ted to the jury, and he is in error when he submits to
the jury an immaterial issue by whomsoever that issue
may have been tendered. The court cannot avoid the
duty which the statute imposes. See *Cooper* v. *Bell,*
127 Tenn. (19 Cates), 142, 153 S. W., 844, Ann. Cas.,
1914B, 980; *Burton* v. *Farmers' Association,* 104
Tenn. (20 Pickle), 416, 58 S. W., 320; *McElya* v. *Hill,*
105 Tenn. (21 Pickle), 319, 59 S. W., 1025; *Crisman* v.
*McMurray,* 107 Tenn. (23 Pickle), 469, 64 S. W., 711,
and *Pile* v. *Carpenter,* 118 Tenn. (10 Cates), 288, 99
S. W., 360. It is only "to try and determine any ma-
terial fact in dispute" that "either party to a suit in
chancery is entitled upon application to a jury." See
section 6282, Shan. Code. Where no material fact is
in dispute, the right to a jury trial under that section
does not exist, and when a court, in a cause where a
jury trial has been applied for under that section and
granted, submits to the jury an issue of fact not in dis-
pute, it abdicates its own duty to adjudicate between

the parties in respect of that undisputed fact, and when it thus surrenders its functions to the jury it goes beyond the law and is in error. We do not say that every such overstepping of the law would entitle the complaining party to a reversal of the decree; but, where he is thereby prejudiced, it is reversible error, and such was its character in the present case, but reversal here can also be based on another ground.

The third assignment of error in this court is as follows:

"The court of civil appeals erred in failing and refusing to find that on the uncontroverted evidence there was no demand for payment of the loss under the policies made after the same became due and payable according to their terms"—and therefore the third issue should have been answered in the negative.

At the close of complainant's evidence in the chancery court, defendants moved the court to direct the jury to find in favor of defendants on the third, and also other issues, for reasons set out in the motion, but the court overruled the motion and defendants excepted; and again, at the close of all the evidence, the same motion was made by defendants. This motion included those issues mentioned in the motion made at the close of complainant's evidence, and also included other issues. But we are concerned at present only with the third issue. The grounds on which said motion, made at the conclusion of all the evidence, was based, were set out in the motion; but the court also overruled this motion, and the defendants excepted.

The action of the chancellor in overruling the motions aforesaid was made the basis of the fifth and ninth assignments of error in the court of civil appeals, which respectively raised the points that the chancellor was in error in failing and refusing to grant defendants' motions for peremptory instructions to the jury, and in failing and refusing to set aside the verdict of the jury on the ground that there was no material evidence to support it. Both of these grounds, as stated, were also set out in the motion for a new trial in the chancery court.

By the foregoing proceedings, the ultimate question in the cause is laid open for review in this court. This question is whether, under the law (there being in our opinion no material facts in dispute), the defendants were liable to complainant for any further sum than that which was paid into the registry of the court; or, to put the question in another way, whether, under the undisputed facts, any liability of defendants can be sustained under the provisions of chapter 141, Acts of 1901, for the penalty therein provided in certain cases, under the construction which the court has placed upon that act. We think the question must be answered in the negative. Under the first section of the above act, there is no predicate for liability of an insurance company to a policy holder for any further sum than the loss sustained while the policy is in force, and interest on the amount of the loss, unless the company "refuse to pay the same (meaning the amount

134 Tenn. 14

of the policy with interest) within sixty days after a demand shall have been made by the holder of said policy on which said loss occurred,'' and the portion of the act above quoted has been thus construed:

"A formal demand must be made on the insurer for the payment of the amount due after the maturity of the policy is fixed according to its terms." *Insurance Co.* v. *Kirkpatrick*, 129 Tenn. (2 Thomp.), 55, 164 S. W., 1186.

And said the court in that case (opinion by the Chief Justice):

"The formal demand not having been made, as required by the statute, there can be no recovery of the penalty."

The result in that case was an affirmance of the decree as to the amount due on the policies, but a reversal of the decree as to the penalty, and the petition to rehear was overruled. It was held, on the petition to rehear, that chapter 141, Acts of 1901, "is a penalty statute and must be strictly construed," and "the demand provided for in the statute is intended to operate as a fair warning to the insurer that the penalty will be claimed on failure to pay within sixty days," and the clear import of what is thereafter said in the opinion is that the insured may, before he makes a demand, or he may after he makes a demand, but before the expiration of the sixty days, and before the insurer has refused to pay, bring his suit upon the policy; but, if he do so in either of the three cases mentioned, his ultimate right of recovery will be the amount of the

policy, and interest thereon computed from the date of its maturity. A demand made before the maturity of the contract of insurance, according to its terms, is not a demand within the meaning of the statute, as the statute was construed in *Insurance Co.* v. *Kirkpatrick,* supra.

An insurance contract, however, like any other contract, may be modified after it is made by the express words of the parties, or by the acts of the parties which evince a meeting of their minds in agreement to modify its terms upon any particular point. The point last stated above was not involved in the *Kirkpatrick Case,* but is insisted on in the present case. In this case the maturity of each policy was fixed by its terms; each policy, after providing that ''the company shall not be liable beyond the actual cash value,'' etc., and after providing how the cash value should be ascertained and the amount of the loss determined, added:

''The same shall be payable sixty days after date, notice, ascertainment, estimate, and satisfactory proof of loss have been received by the company in accordance with the terms of this policy.''

The fire which occasioned the loss in this case occurred on September 25, 1913. Proofs of loss as to each of the policies involved were mailed to defendants on November 1, 1913. These were the only proofs of loss ever submitted to defendants. The date when each proof of loss was actually received by each of the insurance companies does not definitely appear; but, giving complainant the benefit of counting time from

the date of the mailing of each proof of loss in order
to ascertain the maturity of each policy, none of the
policies could have matured at an earlier date than
December 31, 1913.

The only demand for payment of these policies
shown by the transcript was made by a letter from
one of complainant's counsel, dated and mailed De-
cember 18, 1913. The original bills of complainant, as
stated, were filed on January 7, 1914. It is therefore
clear that no demand was ever made by complainant
under any policy involved after the maturity thereof,
until the original bill was filed in each case. The fil-
ing of the bill in each case was not a demand in the
sense of chapter 141, Acts of 1901. A holding to the
contrary would nullify that part of section 1 of the
act which clearly limits the right to recover the penalty
to "all cases when a loss occurs and they (meaning
insurers) refuse to pay the same within sixty days
after a demand shall have been made by the holder of
the policy on which said loss occurred," and such a
holding would also nullify what is said in *Insurance
Co. v. Kirkpatrick,* supra, in disposing of the petition
to rehear in respect of the purpose underlying the act,
for, on that subject, it was there said that the demand
in the statute provided for was intended to operate as
"a fair warning to the insurer that the penalty will
be claimed, on failure to pay within sixty days. It is
not improper or unjust that such warning should be
required. . . . The underlying thought being that
the insurers on formal demand so made would, not-

ing the warning, thereby be induced to pay the loss without suit." But the effect of what we have said as to the time when the policy matured is sought to be avoided by complainant upon grounds now to be stated.

After the fire occurred, complainant employed a Mr. Greggory to represent it in the adjustment of the loss, and under the advice of this adjuster on behalf of the complainant and certain adjusters on behalf of the defendant companies the complainant and the companies on October 6, 1913, entered into the following agreement in writing:

"Nonwaiver Agreement.

"Chattanooga, Tenn., October 6, 1913.

"It is hereby mutually stipulated and agreed by and between De Rossett Hat Company, party of the first part, and the insurance companies whose names are signed hereto, party of the second part, that any action taken, request made, or information now or hereafter received by said party of the second part, in or while investigating and ascertaining the cause of fire, the amount of loss or damage or other matter relative to the claim of said party of the first part, for property alleged to have been lost or damaged by fire, on the 25th day of Sept. 1913, shall not in any respect or particular change, waive, invalidate or forfeit any of the terms, conditions or requirements of the policies of insurance of the party of the second part, held by the party of the first part, or any of the rights whatever, of any party hereto.

"The intent of this agreement is to save and preserve all the rights of all the parties, and permit an investigation of the claim, and the determination of the amount of the loss or damage in order that the party of the first part may not be unnecessarily delayed in their business, and that the amount of their claim may be ascertained and determined without regard to the liability of the party of the second part and without prejudice to any rights or defenses which said party of the second part may have.

"DE ROSSETT HAT CO.,

"By SAMPSON DE ROSSETT, Pres.

"HANOVER FIRE INS. CO.

"HOME INSURANCE CO.

"By EDW. H. SHERLEY, Adjuster.

"LIVERPOOL & LONDON & GLOBE INS. CO.

"INS. CO. of N. A.

"LONDON & LANCASHIRE INS. CO.

"NIAGARA INSURANCE CO.

"GERMAN AMERICAN INS. CO.

"NORTHERN ASSURANCE CO.

"By R. A. REDDING, Adjuster.

"AMERICAN CENTRAL INS. CO.

"VA. FIRE & MARINE INS. CO.

"By HARRY J. ERWIN, Adjuster."

On October 7, 1913, said parties entered into the further agreement which reads:

"Under nonwaiver agreement entered into October 6, 1913.

"By and between De Rossett Hat Company, party of the first part, and the insurance companies signing same, parties of the second part:

"This memorandum witnesseth that:

"Whereas, the stock described by policies issued to the De Rossett Hat Company, by the insurance companies whose names are signed hereto, having been damaged by fire on September 25, 1913.

"It is hereby mutually understood and agreed, by and between the De Rossett Hat Company, party of the first part, and the insurance companies whose signatures are attached hereto, parties of the second part, that the sound value of stock at the date of fire was $27,070.74 and the loss and damage to said stock of the De Rossett Hat Company, is $20,070.74, and it is agreed by both parties that all remaining salvage shall revert to the party of the first part.

"It is hereby further agreed by and between both parties that the agreed loss and damage to said stock is without admission or denial of liabilitity of the parties of the second part.

"In witness whereof, we have hereunto attached our hands and seals in duplicate, original in possession of Southern Adjustment Bureau, Atlanta, Ga., this 7th day of October, 1913.

> "DE ROSSETT HAT CO.,
> > "By SAMPSON DE ROSSETT, Pres.
> "LIVERPOOL & LONDON & GLOBE INS. CO.
> "INSURANCE CO. of N. A.
> "LONDON & LANCASHIRE INS. CO.

"German American Ins. Company.

"Northern Assurance Company.

"Hanover Fire Ins. Co.

"Niagara Ins. Co.

    "By R. A. Redding, Adjuster.

"American Central Ins. Co.

"Va. Fire & Marine Ins. Co.

"Home Insurance Co.

    "By Harry J. Erwin, Adjuster.

"Fidelity Underwriters.

    "By Harry J. Erwin, Adjuster."

Complainant's president, Sampson De Rossett, tes-
tified that he put a question to Mr. Greggory, who, as
stated, was complainant's adjuster, in the presence of
the adjuster for the insurance companies, and the ques-
tion, as De Rossett states it, was: "What effect would
this nonwaiver agreement have on our getting our
money?" To which question he says Greggory re-
plied as follows: "He said, it will not delay your pay-
ment; maybe in twenty-four hours, and not over five
days at the outside you will have your money." De
Rossett was asked when that conversation between
himself and Greggory took place, and he replied: "The
next morning, just after we had all signed the papers."

Does the foregoing conversation destroy the de-
fense of the insurance company heretofore outlined;
or to put the question in another way, does that con-
versation modify each of the original policies, and
each of the written agreements signed prior to the con-
versation so as to cause each of the policies to mature

at an earlier date than that fixed by their terms? The court of civil appeals answered the question in the affirmative. We answer it in the negative.

There is a dispute of fact as to whether the conversation ever occurred in the presence of the adjusters for the insurance companies, and a dispute of fact as to whether the adjusters heard the conversation, or understood it. But, passing this question, and assuming that the conversation occurred after the contracts were signed and within the presence, hearing, and understanding, of the adjusters for the companies, what was its effect? Beyond all question, the conversation was after the written contracts were signed. Complainant, in its bill, does not assail the nonwaiver agreement and the adjustment agreement as having been procured by the fraud of the companies or their agents. Its pleadings do not seek to have these contracts canceled or set aside. On the contrary, complainant claims benefits under these contracts, and has received benefits under them. In its original bill the amount of the loss is stated to have been ascertained and fixed by the adjustment. Complainant has enjoyed the benefit of having the amount of the loss, as fixed by the adjustment, paid into the registry of the court, together with interest thereon, thus relieving complainant of introducing evidence in court to fix and determine the amount of the loss. These benefits, under the contracts, complainant enjoyed before the present branch of the case was submitted to the jury in the chancery court. It also enjoyed, under these contracts, a

prompt adjustment of its loss, and was thereby enabled to prepare and submit its proof of loss without the difficulty which it would have encountered had the adjustment not been made. In so far as the companies could execute the adjustment agreement it had been executed by them prior to the submission of the present branch of the case to the jury.

Now, complainant having secured all of the foregoing advantages under the nonwaiver and adjustment contracts, and claiming under them still further advantages in the present branch of the case, sought, by its evidence on the trial before the jury, to nullify, by its evidence, to wit, the conversation aforesaid, those provisions of the nonwaiver agreement, and the adjustment agreement, which afford protection to the insurers, under the original contracts of insurance, respecting the time when each policy shall mature.

The proof of loss as to each policy mailed, as stated, on November 1, 1913, was accompanied by a letter from complainant's counsel. There is in this letter a distinct recognition of the execution of the nonwaiver contract, of date October 6, 1913, and of the adjustment contract, of date October 7, 1913, and the letter shows that the proof of loss submitted in each case was according to the adjustment. Can the complainant thus occupy inconsistent positions? Will it be heard thus to nullify its solemn nonwaiver contract which contains the provision that no action taken under the agreement shall in any respect "change, waive, invalidate, or forfeit any of the terms or conditions, or requirements of the

policies of insurance''? A negative answer must be given to this question. The doctrine of estoppel by conduct applies with full force to such a state of facts. *Electric Light Co.* v. *Gas Company,* 99 Tenn. (15 Pickle), 371, 42 S. W., 19. Authorities could be multiplied upon the point if necessary.

Even if not estopped to pursue a course of conduct so manifestly unjust, we think it clear that the conversation between the complainant's president and its adjuster was merely a question and answer as to the probable result or effect of the nonwaiver contract and the adjustment contract in respect of an early receipt by complainant of the amount agreed upon by the adjustment. De Rossett's evidence on the point was objected to at the time it was submitted to the jury, but the chancellor overruled the objection. However, if no objection had been made to it, we are unable to see how it could have affected the validity of the written contracts by which the complainant company had bound itself, as stated above.

According to the view we take of the case, it is unnecessary to consider any further assignment of error. Assignment No. 3 must be sustained, and it is conclusive of the rights of the parties. As we see the case, there was no evidence that any demand within the meaning of chapter 141 of Acts 1901 was ever made upon the insurers after the several policies matured, and the present case falls clearly within the authority of *Insurance Co.* v. *Kirkpatrick,* supra, and must take

the same course.   It therefore results that the decree
of the court of civil appeals is reversed, and the suit
of complainant, in so far as it seeks to recover under
chapter 141, Acts of 1901, is dismissed at complain-
ant's cost.