J. M. HUGHES, et al. v. THE HOME INSURANCE COMPANY.

Middle Section. June 15, 1928.

Petition for Certiorari denied by Supreme Court, December 22, 1928.

Joe V. Williams, of Chattanooga, for appellant, Insurance Co.

A. R. Hall and S. P. Raulston, of Jasper, for appellees, Hughes, et al.

CROWNOVER, J. This is a suit to recover $1600 on two policies of insurance on a barn and contents, claimed by complainant J. M. Hughes, which had been mortgaged to complainant Phoenix

Life Insurance Company, which property was destroyed by fire on April 19, 1927, and also to recover twenty-five per cent statutory penalty.

The defendant answered and denied that the policies were in force at the time of the fire, and denied all liability. The defenses set up were that the complainant had forfeited the policies, first, because of misrepresentations in the applications, wherein J. M. Hughes was represented to be the sole and absolute owner; second, because of undisclosed mortgages or deeds of trust; and third, because the assured had failed to comply with the provisions of the policies by giving notice and filing proofs of loss.

Several depositions were taken and read to the Chancellor at the hearing, and he was of the opinion and decreed that complainant J. M. Hughes should recover $1600 for the loss, $600 of which recovery should be for the benefit of the Phoenix Life Insurance Company, but he further decreed that complainant was not entitled to the twenty-five per cent penalty.

In announcing his opinion the Chancellor stated that the notice of the loss given to the defendant's agent, Mr. Sharp, together with other proof and facts in the record, was sufficient on this question, and since the barn was built by complainant Hughes out of his own money, and he had made no fraudulent representations in his applications that increased the hazard or risk, the complainants should be and were entitled to recover, as there was no question as to complainant's ownership of the hay, grain and the barn destroyed by the fire.

From which decree both sides appealed. The complainant J. M. Hughes appealed from the decree disallowing the twenty-five per cent penalty, and the defendant, Home Insurance Company prayed a broad appeal from the whole decree, and has assigned six errors, which are in effect that there was no evidence to support the decree of the Chancellor, and that the Chancellor erred in failing to find the facts as required by statute, and further erred in holding that the notice and proofs of loss were sufficient, and in not holding that the complainants had forfeited their rights under the policy because complainant Hughes had made misrepresentations in his applications for the policies in that he represented that he was the sole and absolute owner of the property, whereas he only owned an undivided interest in the barn, hay and grain destroyed, and on account of said false and fraudulent representations he had forfeited all rights in the contracts or the policies.

The facts necessary to be stated are that the complainant J. M. Hughes, and his wife, Lillie Hughes, and his sister-in-law, Mrs. Jessie Hughes, purchased a farm in Marion county in June, 1923,

and the deed was executed conveying to said J. M. Hughes and his wife a one-half interest and to Mrs. Jessie Hughes, a one-half interest, and they all lived on said property thereafter.

In the early part of the year 1927 complainant J. M. Hughes made applications in his name to the Home Insurance Company of New York, for insurance policies on the buildings and personal property situated on said farm, and on February 14, 1927, a policy was issued to said Hughes by said Company in the sum of $2200, of which $600 covered the dwelling house, $200 on the household furniture, $400 on a tenant's dwelling, $600 on the barn and sheds attached thereto, $200 on grain, seed, etc., $200 on hay, fodder, etc., making a total of $2200, which policy was properly assigned and made payable to the Phoenix Mutual Life Insurance Company of Hartford, Connecticut, as said latter Company held a deed of trust on said farm in the sum of $7000.

On March 2, 1927, the defendant Home Insurance Company issued another policy to complainant J. M. Hughes for a total sum of $600, of which $200 was on grain and seed and $400 on hay, straw and fodder.

Complainant J. M. Hughes made written applications to the defendant for the issuance of said policies, copies of which were attached to the policies, in which the complainant Hughes answered several questions as follows: "Are you the sole and absolute owner of the property proposed to be insured?" Answer, "Yes." "Is the title to the land on which the buildings are situated, in your name?" Answer, "Yes." "Is any of your property, real or personal, under mortgage, lien or encumbrance? If so, state how, to what amount and when due?" Answer, "Yes, $7000, Phoenix Life Insurance Company, due ten years, $385 per year." As will be seen from said applications, the contracts were not enforceable if the complainant Hughes made any false statement or misrepresentations, and that these statements and representations made by the complainant Hughes were in the nature of warranties; and it was provided in said policies that the same should be void if the assured shall not be the sole and unconditional owner in fee of the property.

The proof shows that said Hughes paid the premiums on both of said policies and they were in force on April 19, 1927, when the barn and its contents—hay, fodder and grain were totally destroyed by fire. The defendant's local agent, Sharp went to the farm on the next day after the fire and made a full investigation of the loss, which was as follows: 48 tons of hay, worth $15 per ton, 550 bushels of corn, worth 75 cents per bushel, and the barn was worth $1000, making a total loss of about $2132.50.

A short time after Mr. Sharp made his report of the loss to the Company, Mr. Todd, who seems to have been a field representative and adjuster for said Company, came to complainant's farm and made an investigation of the loss, sometime in May. On June 7th Mr. Todd came back again for the purpose of adjusting the loss and offered $800 settlement in full, which complainant J. M. Hughes at first agreed to accept, and they filled out proofs of loss, itemizing the loss, which proofs were signed by J. M. Hughes, and they went to Jasper for the purpose of Hughes making oath to the same before a Notary Public. After Hughes arrived in Jasper he consulted with his attorneys and they advised him not to accept the settlement, and thereupon he acquainted Mr. Todd of the fact that he had refused to accept the settlement of $800. Thereupon the agent offered him $900, which he also refused to accept. Thereafter complainant's attorney, A. R. Hall wrote the defendant Company asking whether it refused to pay the policy, and he received a letter in reply stating that proofs had been executed, and that they were ready to send draft in settlement. Other correspondence ensued and the Company suggested that complainant's attorney discuss the matter with the Company's attorney, which was refused and this suit was instituted.

We will discuss the defendant's assignments of error first, as the determination of these assignments of error will necessarily determine complainant's assignment of error. As will be seen the defendant has abandoned the defense of undisclosed mortgages. This defense is not available unless it be a matter material to the risk. See Hughes v. Insurance Co., 147 Tenn., 164, 246 S. W., 23.

The first assignment is, there is no evidence in the record to support the decree of the Chancellor. The case was tried below on depositions, according to the forms of chancery practice, hence the trial is de novo in this court, and this assignment goes to a review of the whole record. In the view we take of the matter, and the conclusions that we have reached as to the other assignments of error, it follows this assignment must be overruled.

The second assignment is that the Chancellor erred in failing to find the facts as required by statute. This assignment must be overruled because it is too general.

The third assignment is that the Chancellor erred in holding that the notice of loss given to defendant's local agent Sharp, together with other proof and facts in the record, was sufficient on the question of proofs of loss. The policy required preliminary notice to be given within fifteen days and that the proofs of loss be made

and sworn to within sixty days from the date of loss. The proof shows that Mr. Sharp, the local agent as soon as he had learned of the fire, went to complainant's premises on the next day and made a complete investigation in which he ascertained the exact loss of grain, hay and the barn, which he reported to the Company. We think this is sufficient on the question of giving the preliminary notice. Some days later the defendant's adjuster Todd went to the premises and conferred with J. M. Hughes and investigated the loss. He went away and returned again on June 7th, at which time he and Hughes filled out proofs of loss on both policies, which were signed by Hughes. These proofs of loss were delivered to the Company by Todd, and on June 17, 1927, before the sixty days had expired, the Company wrote to Hughes' attorney, stating "A proof was executed by Mr. Hughes for the claim under each policy respectively," etc. We think these proofs of loss are sufficient. The Insurance Company waived formal proofs of loss by sending its adjuster to the premises and conferring with the owner as to the amount of loss and the origin of the fire. See Crabtree v. Insurance Co., 6 Hig., 509, 517; Ligon v. Insurance Co., 87 Tenn., 341, 10 S. W., 768; Insurance Co. v. Norment, 91 Tenn., 1, 18 S. W., 395; Hackney Co.. v. Wood, 3 Tenn. App. Reps., 421; Gleason v. Prudence Fire Insurance Co., 127 Tenn., 8, 151 S. W., 1030; 26 C. J., 390.

However it is insisted that the complainant signed a nonwaiver agreement and therefore it did not waive formal proofs of loss, citing De Rossett Hat Co. v. Fire Insurance Co., 134 Tenn., 199, 183 S. W., 720. We are satisfied that there is nothing in this contention for the reason that complainant had not signed the nonwaiver agreement at the time that the agent Sharp went upon the premises, made full investigation and took statement of loss. The proof shows that he had authority from the Company to adjust losses of this amount. However we are of the opinion when the proofs of losses which were made out by Hughes and Todd and were signed by Hughes, complied with the requirements as to formal proofs of loss, especially in view of the fact that the Company acknowledged, before the time had expired, that "a proof was executed by Mr. Hughes for the claim under each policy respectively," etc.; hence, we think there is nothing in this assignment of error and it is overruled.

The fourth assignment of error is that the Chancellor erred in holding that no fraudulent representations had been made by Hughes in his applications for the policies that increased the hazard or risk. We think that this assignment presents a serious prop-

osition. As above set out, Hughes stated in his written applications that he was the sole and absolute owner of the property and that the title to the land on which the buildings were situated was in his name. The policies provided that if the assured was not the sole and unconditional owner in fee of said property then each policy should be null and void. The proof showed that J. M. Hughes furnished the money and erected the barn on the farm, a one-half interest of which had been conveyed to him and his wife by the entireties, and ·the other one-half to his sister-in-law, Mrs. Jessie Hughes. The proof shows that Hughes erected the barn at his own expense without any agreement with his wife, Mrs. Lillie Hughes and his sister-in-law, Mrs. Jessie Hughes. Hence the barn was owned by them jointly.

Where a party does not have the title as represented and the representation is made with actual intent to deceive, or where the representation increased the risk of loss, this voids the policy. See 26 C. J., pages 170-173, secs. 208-209; pages 179-180, secs. 217, 219; page 182, sec. 222; 3 Cooley's Briefs on Insurance (2 Ed.), 2129-2163; Franklin v. Fireman's Insurance Co., 4 Tenn. App. Reps., 688; Moore v. Insurance Co., 5 Hig., 299; Catron v. Insurance Co., 6 Humph., 178; Schmid v. Insurance Co., 37 S. W., 1013; Foster v. Illinois Traders Home Insurance Co., 156 Tenn., 436, 300 S. W., 7. The same rules apply where the party only owned an undivided interest, and if he represented that he was the sole and absolute owner in fee of the property when he only owned an undivided interest, it avoids the policy. See 3 Cooley's Briefs on Insurance (2 Ed.), 2182.

However, it is insisted by the complainant that since the enactment of chapter 160 of the Acts of 1895, which provides in substance, that no misrepresentation or warranty made by the assured in the negotiation of the contract, shall be deemed material or avoid the policy, unless made with ·actual intent to deceive, or unless it increased the risk of loss (See Shannon's Code, sec. 3306), and that where the insured was the ·sole owner of the building but only owned an interest in the land on which it stood, he was entitled to recover (see 3 Cooley's Briefs on Insurance (2 Ed.), 2179), as the above statute declared that unless the misrepresentation or warranty increased the risk of loss it should not defeat or void the policy, it being insisted that this rule applies to a grantee holding under a parol conveyance, since the statute of frauds cannot be invoked except by the parties to the transaction. See 26 C. J., 173, sec. 209, n. 90; 175, sec. 212, n. 25; 27 C. J., 304, 309, sec. 395, 20 Cyc., 306-307; 3 Cooley's Briefs on Insurance (2 Ed.), 2150, 2190, 2198; Aetna Insurance Co. v. Miers, 5 Sneed, 138; Southern Insurance Co.

v. Estes, 106 Tenn., 472, 480, 62 S. W., 149, 52 L. R. A., 915; 82 Am. St. Reps., 892.

Confessedly the intention of the Statute, Shannon's Code, section 3306, was to put representations and warranties upon the same footing, and make them harmless in the protection of the policy, when as affirmance of facts they were made in good faith and were immaterial. This statute was directed to every misrepresentation, whether in the form of representation or warranty, and as against every such misrepresentation, when innocently made and immaterial in character, the right of the policyholder will prevail, for this statute declares that unless the misrepresentation or warranty increased the risk of loss, it shall not defeat or void the policy. See Insurance Co. v. Stallings, 110 Tenn., 1, 72 S. W., 960; Bank v. Fidelity & Guaranty Co., 110 Tenn., 10, 75 S. W., 1076; and notes to Shannon's New Code, sec. 3306.

This statute must be read into every policy of insurance, as if incorporated therein, and so much of the policy as is in conflict with the statute must be held as entirely nugatory as if never written. See Insurance Co. v. Whitaker, 4 Cates, 164, 79 S. W., 119.

But the trouble in this case is that the complainant J. M. Hughes erected this barn on land owned by the tenants in common, and in which he owned only an undivided interest, without making any agreement with the parties as to who should own the building, hence the building was owned by the tenants in common who owned the land; and by no sort of reasoning can it be held that a resulting trust or a trust of any kind should be set up in his favor. Hence under the holding in the case of Foster v. The Illinois Travelers Insurance Co., supra, complainant cannot recover $600 for the loss of the barn, and this assignment of error to this extent must be sustained.

But the hay and grain destroyed was raised on the farm. It appears that there was an arrangement between Hughes and his wife and his sister-in-law, Mrs. Jessie Hughes, whereby they should all live as one family in the home on this property, that Mrs. Jessie Hughes would work out in the hosiery mill, and that J. M. Hughes was to cultivate the lands and furnish the maintenance for his wife and Mrs. Jessie Hughes and her children; hence, we are of the opinion that under this arrangement Hughes was the owner of the hay and grain destroyed, and was obligated to furnish them maintenance, and that there was no misrepresentations as to his ownership of the hay and grain. He was in possession of the property and the other parties laid no claim of title or of ownership of this personalty. It results that the fourth assignment of error and the fifth assignment of error as to the ownership of the hay and

grain must be overruled as complainant is entitled to recover $600 on the hay and $400 on the corn; but that portion of the fifth assignment of error as to the barn is sustained.

The sixth assignment of error, that the Chancellor erred in refusing to hold that under the proof complainants were not entitled to recover and that by their failure to comply with the contracts in filing proofs of loss, and because of their false and fraudulent representations as to title, etc., they had forfeited all rights in the contracts, is not well taken and must be overruled. Where a policy covers separate and distinct classes of items of property separately valued, although for a gross premium, the contract is divisible, and a false representation, concealment or breach of an affirmative warranty or condition precedent with respect to one of such classes or items, will not invalidate the policy as to the others. If the breach of condition as to a part of the property does not increase the risk on the remainder, the policy will be voided only as to that part to which the breach pertains. See 26 C. J., page 101, sec. 100; 192-194, sec. 235; Light v. Greenwich Insurance Co., 105 Tenn., 480, 58 S. W., 851; 3 Colley's Briefs on Insurance (2 Ed.), 2957 to 2965, 2973. This same rule applies to policies covering real estate and personal property, such as a building and its contents. See 3 Cooley's Briefs on Insurance (2 Ed.), 2966-2970; Royal Insurance Co. v. Martin, 192 U. S., 149, 48 L. Ed., 385. We think that the rule announced in Home Fire Insurance Co. v. Connelly, 104 Tenn., 93, 56 S. W., 828, does not apply in this case, because we think that the complainant did not intend to perpetrate any fraud on the Insurance Company.

Now with respect to complainant's assignment of error as to the disallowance of the twenty-five per cent penalty, provided by Chapter 141 of the Acts of 1901, we are of the opinion that there is no error in the decree of the Chancellor in this respect, first, because the suit was brought before the expirations of sixty days after demand. See Thompson v. Insurance Co., 128 Tenn., 526, 162 S. W., 39; De Rossett Hat Co. v. Insurance Co., supra. Second, it cannot be said that the refusal to pay was not in good faith. In fact, we think that the Insurance Company was correct in refusing to pay all the policy. See Insurance Co. v. Smith, 3 Hig., 161; Franklin v. Insurance Co., 4 Tenn. App. Reps., page 688. Third, because it does not appear by proof or otherwise what expenses, if any, have been incurred by complainant, nor what additional injury or loss had been inflicted, as required by the statute. However, had this reason been the only one for disallowing the penalty, we might have allowed complainant's solicitors fees under the rule laid down in the case of Edington v. Insurance Co., 134 Tenn., 188, 183 S. W., 728; but for the reasons above stated, we think that

complainant is not entitled to any penalty, and his assignment of error must be overruled.

It results that the decree of the Chancellor is modified so as to disallow the $600 recovery for the loss of the barn, but the decree of the Chancellor in all other respects is affirmed, and a decree will be entered in this court in favor of the complainants for $1000 and interest from June 27, 1927, for the hay and grain destroyed, against the defendant Home Insurance Company, and the sureties on the appeal bond. The cost that accrued in the court below and one-half of the cost of the appeal is also adjudged against the defendant and the surety on its appeal bond. The other half of the cost of the appeal is adjudged against complainants J. M. Hughes and the sureties on his appeal bond. Executions will issue accordingly.

Faw, P. J., and DeWitt, J., concur.