L. H. MADEN v. HOME INSURANCE COMPANY, WINCHESTER FIRE INSURANCE COMPANY OF N. Y., WORLD'S FIRE & MARINE INSURANCE COMPANY, and NEW HAMPSHIRE FIRE INSURANCE COMPANY.

Eastern Section. July 14, 1928.

Petition for Certiorari denied by Supreme Court, November 23, 1928

330

Cox & Taylor, of Johnson City, for appellant.
Barnes & Lewis, of Johnson City, for appellee.

PORTRUM, J.   This is a suit by L. H. Maden against the four insurance companies as named in the caption to recover a loss caused by a fire which destroyed his store building and which was covered by policies of insurance issued by each of the named companies.   The insurance aggregated $9,500 on building, merchandise and fixtures, and was divided as follows:

1.   The Home Insurance Company in the sum of $2,500, covering merchandise.

2.  New Hampshire Fire Insurance Company, in the sum of $2,000, $1,000 of which was on the building, and the other $1,000 on fixtures.

3.   Winchester Fire Insurance Company in the sum of $2,500, of which $500 was on the building, another $500, on fixtures and the remaining $1500 on the merchandise.

4.  Worlds Fire and Marine Insurance Company, in amount $2,500 covering merchandise.

The net result is that at the time of the fire there was (a) $1500 on fixtures; (b) $1500 on the building; and (c) $6500 on merchandise.

The insurance companies contest the right of the complainant Maden to recover on the policies for the following reasons:

1.   The complainant did not comply with what is known as the Iron Safe Clause, contained in each of the policies.

2. That he failed to file a proper proof of loss, as required by the policies.

3. That the property was encumbered at the time of the writing of the policies and at the time of the fire by a deed of trust which fact was not disclosed to the companies, and this avoided the policies under their terms.

4. The legal title was in the trustee named in the trust deed, and the trustee nor the beneficiary in the trust deed were made parties to the suit.

5. That the recoveries are excessive and not sustained by any proof in the record of the actual value of the property destroyed.

The most serious question raised is under the first question made, which is the complainant did not comply with the Iron Safe Clause. The Iron Safe Clause contained in each of the policies is as follows:

"Inventory—Iron Safe Clause: (Requirement to keep books and inventory.) It is made a condition of this policy:

"(1) That the assured under this policy shall take an inventory of the stock and other personal property hereby insured at least once every twelve months during the term of this policy, and unless such inventory has been taken within one year prior to the date of this policy, one shall be taken in detail within thirty (30) days thereafter;

"(2) That the assured shall keep a set of books showing a complete record of business transacted, including all purchases and sales, both for cash and credit;

"(3) That the assured shall keep such books and inventory securely locked in an iron fire proof safe at night, and at all times when the store mentioned in the within policy is not actually open for business, or in some secure place not exposed to a fire which would destroy the building where such business is carried on;

"(4) That in case of loss the assured shall produce such books and last inventory."

The complainant had no iron safe but he lived in a separate building, where he kept his books and papers, and this building was not destroyed by the fire which destroyed the store building. His last inventory was taken on July 1, 1926, and the fire occurred on September 11, 1926. For some reason, not explained in the record, Maden had carried this inventory to the store building, and it was in the store and destroyed by the fire. It appears Maden was a good bookkeeper, and there is no issue here that his books do not show the cash and credit sales, the only issue being the inventory was not produced, as required under the policy. It appears Maden had taken a general summary from his inventory, and this was produced, and it is insisted that this summary, which shows the total of the different items in the inventory, is a sub-

stantial compliance with the provision of the policy, because from the books and this summary the amount of the loss can be ascertained.

The summary reads as follows:

| | |
|---|---:|
| "Ladies', men's, and children's underwear | $ 371.60 |
| Yardage goods | 1721.33 |
| Men and boys hats and caps | 273.60 |
| Men, Youth, and children's overalls filed | 328.70 |
| Drugs and medicines | 282.25 |
| Fountain supplies | 170.60 |
| Ladies and misses summer and winter headwear | 155.65 |
| Men and boys ready to wear clothing | 460.30 |
| Ladies ready to wear clothing | 271.75 |
| Men, Ladies, and children sweaters | 210.80 |
| Men, ladies and children dress and work gloves | 71.60 |
| Men, ladies and children hosiery | 168.20 |
| Men, ladies and children shoes | 2810.30 |
| Men, ladies and children overshoes | 132.65 |
| Dishware | 128.65 |
| Notions | 428.65 |
| Groceries | 1030.61 |
| Hardware | 621.36 |
| Total | $9640.60 |

Summary

| | |
|---|---:|
| Inventory of stock July 1, 1926 | $9640.60 |
| Inventory of Fixtures same date | $2010.50 |
| Building, shelving and counters | $3000.00 |
| Total | $14651.10" |

The complainant was able to give an exact inventory of the fixtures, supplementing the above reference to the fixtures. The question presented then is whether or not this is a substantial compliance with the Iron Safe Clause.

"We are of the opinion that the said provisions fall directly within the terms of Section 22, Chapter 160, page 332, Acts 1895. . . . . It is also clear that the warranty, so called, purporting to be contained within the clauses above mentioned, could not increase the risk of loss. The provisions referred to could be useful only in preserving for the insurance company, and for the insured as well, accurate evidence of the amount of goods on hand at the date of the fire. Such evidence is, no doubt, desirable in all cases, and so far the provisions of the Iron Safe Clause are commendable; and it cannot be doubted that in every case a failure to preserve books and papers, if not satisfactorily explained, would

be a circumstance of great weight against the insured in estimating the amount of the loss. . . . Still, after expunging so much of the language quoted as undertakes to create a warranty, making void the policy for failure to comply therewith, there yet remains a rational and valid agreement, failure to substantially comply with which imposes upon the insured the duty of making a satisfactory explanation; and the total failure to comply arouses such grounds of suspicion in the minds of the court as to require proof of a high degree of certainty to establish the amount of the loss. This was, in substance, the view taken by this court in the case of Ivalensky v. Conn Fire Insurance Company, decided at Knoxville during the year 1901.'' Insurance Company v. Whittaker, 112 Tenn., page 163, 79 S. W., 119.

"On the other hand, on the theory that the Iron Safe Clause may be a promissory warranty, it is in effect a condition subsequent, which should be construed strictly against the right of forfeiture; and it has been held in other jurisdictions and by the weight of authority that a substantial compliance with the terms of the clause is sufficient." Cooley's Briefs on Insurance, Vol. 2, page 1818. See also the case of McNutt v. Virginia Fire and Marine Insurance Company, Tenn. Ch. App. (45 S. W., 61), cited in Hughes Bros. v. Aetna Insurance Co., 148 Tenn. 293, 255 S. W., 363.

Referring to the Iron Safe Clause, in the case of Hughes Bros. v. Aetna Insurance Company, it is said:

"Such clause is necessary in a contract of insurance on a fluctuating stock, to protect the insurer against the fallibility or dishonesty of the insured. Such records, showing the amount and value of goods acquired and the amount and value of goods sold, enable the insurer to tell with a proximate accuracy, the amount and value of goods on hand at the time of the loss. Without such record, the insurer has no protection whatever against false or partial estimates of the insured and his friends. The amount of the loss becomes a question of guess work, and the answer depends on testimony of biased witnesses.

". . . . . It is permissible for insurers to protect themselves against such a situation, and for this reason the Iron Safe provision in contracts of insurance has been everywhere thought reasonable. A substantial compliance with this provision must be exacted. Expert bookkeeping is not required, but it is competent to require the keeping of such books as will fairly show to a man of ordinary intelligence all purchases and all sales, both for cash and credit, and it is competent to require an effort, at least, to keep such books in a safe place."

In the Hughes case, Hughes Bros. had no data upon which to form an estimate of the cash and credit sales, nor of the amount

of the goods on hand. They attempted to supply this proof from memory, and the court held that such evidence was mere guess work.

In this case we have evidence which will "enable the insurer to tell with a proximate accuracy the amount and value of goods on hand at the time of the loss." This summary of inventory, above set out, furnishes this information, and protects the insurer against the fallibility of the insured, and also against his dishonesty, for it is as easy for the insured to fabricate an inventory as a summary of the inventory. We think this is a substantial compliance, in view of the fact the evidence shows the insured is a man of good character and integrity. We concur with the holding of the Chancellor that the insured substantially complied with the Iron Safe provision of his policies.

There is a line of authorities requiring a strict compliance with this provision, but Tennessee does not fall within this class. It authorizes a substantial compliance with the provision. It is not necessary, therefore, to review the cases cited by the appellant.

At any rate, this provision of the policies will not avoid the provision of the policies insuring the fixtures and buildings, and the companies were not justified in declining to pay these items of insurance on the ground of the failure of the insured to comply with the Iron Safe Clause.

The insured, through his attorney, filed an exhaustive proof of loss, in which the insured gave to the insurers his opinion of the cause of the fire. This proof of loss was sworn to, and we think met all provisions of the policies in reference to requirement of proofs of loss.

The fact that the property was encumbered and the trustee and beneficiaries were not parties makes no difference. The fact that the insured did not divulge this information does not avoid his policies, and the trustee and beneficiaries are not necessary parties. Insurance Company v. Whittaker, supra.

The insistence that the recoveries for the goods are excessive, is not subject to review here. The appellant takes up the different items of shoes, yardage goods, etc., and attempts to show these articles were not worth the amount allowed by the Chancellor, because in some instances they were old and the styles had changed.

This question makes one for a reference. This court cannot undertake to take up the different articles contained in this store and pass upon the value of each. The Supreme Court has recently held where a reference was proper and was not demanded or waived, then the holding of the Chancellor was conclusive if there was any evidence to support it. Provident Life & Insurance Company v. Globe Indemnity Co. (Tenn.), 3 S. W. (2nd), 1057.

Maden has also appealed from the decree of the Chancellor, and assigns error because the Chancellor failed to grant a penalty of twenty-five per cent as a part of the judgment against the insurance companies. We see no reason why the insurance companies should not have paid the loss on the building and fixtures, but before the insured can recover the penalty he must make demand upon the insurance company for the payment of the policy after its maturity, and must wait sixty days thereafter in order that the insurance company might have this time to determine whether or not it would pay. The policies in question provide that they are payable sixty days after the amount is determined, so the demand for payment could not be made until sixty days after the loss was fixed and suit could not be brought until sixty days after the demand. Maden waited sixty days or until his right to make the demand had matured. He then brought suit, without giving the companies sixty days to determine whether or not to pay, and, for this reason, he is not entitled to a penalty. DeRossett Co. v. Fire Insurance Co., 134 Tenn. 199, 183 S. W., 720.

We find no error in the decree of the Chancellor, and it is in all things affirmed. The parties will pay the costs incident to their appeals.

Snodgrass and Thompson, JJ., concur.