LOTTINGER, Judge.
Three cases, consolidated for the purpose of trial, arose from a back injury sustained by Louie A. Richard on November 10, 1949, while in the employ of Hudson Engineering Corporation, and. a subsequent automobile collision for which additional injury is asserted, which occurred on January 24, 1950, between Leonville and Opelousas in St. Landry Parish. Louie A. Richard filed two suits, one against Hudson Engineering Corporation and its insurer, Travelers Insurance Co., for compensation payments as. a result of the accident'of November 10,. 1949; and the other suit for personal injuries resulting from the automobile accident of January 24, 1950, this latter suit being against Traders & General Insurance-Company, the insurer and A. B. Nolan, the-owner and driver of the other vehicle. The-third suit was filed by Randolph Guilbeau> against A. B. Nolan and his insurer, Traders & General Ins. Co., for damages to his. automobile resulting from the accident of.'. *535 January 24, 1950. The lower court gave judgment in favor of Richard for compensation payments, but denied his demand in the second suit, against Nolan and Traders & General Ins. Co., for personal injuries resulting from the' automobile accident. The lower court gave judgment in favor of Guilbeau for damages to his automobile. Separate judgments were rendered below. As the same factual circumstances prevail in each case, and for purposes of brevity, we will consider the three cases together, but will render separate judgments.
On November 10, 1949, the said Louie A. Richard was employed as a finished carpenter by the Hudson Engineering Corporation which was engaged in the construction of a plant for the Humble Oil Company near the City of Opelousas, and which was the owner of a workmen’s compensation insurance policy, sold and issued by the Travelers Insurance Company, co-defendant with the Hudson Engineering Corporation. On the morning of said date, Richard was carrying a largé roll of felt paper, and when he stooped to put it down, 'he felt a pain in his lower back. ’ He continued working, however, and later, while carryifig a long piece of lumber, he felt a most severe pain in the lower back and was taken to a hospital, he being unable to continue work. He was treated and examined by Dr. W. J. Briley of Opelousas, at the instance of the Travelers Insurance Company, and subsequently examined by Dr. James L. Le-Noir of New Orleans, an orthopedic specialist, and was paid compensation at the maximum rate of $30 per week from November 10 to February 3, 1950. On January 24; 1950, while Richard was riding in an automobile, owned and driven by Randolph Guilbeau, in which Mrs. Guilbeau was also a passenger, a collision occurred between Guilbeau’s car and a truck owned and being driven by A. B. Nolan, which truck was being backed out of Nolan’s private driveway into the public highway by Nolan, when it sideswiped the Guilbeau car which was proceeding along the highway. The Nolan truck was covered by a policy of public liability and property damage insurance, sold and issued to Nolan by the Traders & General Insurance Co. Subsequent to the automobile collision, Richard was again examined by Dr. Briley, Dr. Le-Noir and by Dr. George C. Battalora, another orthopedic specialist, and by Dr. Robert Morrow.
Two suits were filed by Richard, one being against the, Hudson Engineering Corporation, and the Travelers Insurance Company, in which he alleged permanent total disability as a. result of the injury to his back on November 10, 1949, while in thé employ of Hudson Engineering Corp., and asked for compensation at the rate of $30 per week from November 10, 1949, during the period of disability not exceeding 400 weeks, with legal interest-on each overdue payment from its due date until paid and subject to a credit in the amount of compensation paid to petitioner from November 10, 1949, to February 3, 1950, plus a penalty of 12 per cent on all weekly compensation payments which are now more than 60 days overdue with like penalty on all such payments which might become overdue in the future, before satisfaction of the judgment rendered herein, together with attorney’s fees in the sum of $1,250, because of the insurer’s refusal to pay further compensation to petitioner on account of said injuries after February 3, 1950, and that said action was capricious, unlawful and arbitrary, and the other being against Traders and General Ins. Co. and A. B. Nolan in which it was alleged by petitioner-that, as a result of the automobile accident of January 24, 1950, his back injury was aggravated, and that he has since suffered excruciating and severe pain and agony and a weakness in his legs which has progressively grown worse, which injuries he alleges have made him a cripple for life, and for which he prays for judgment in the sum of $17,500.
The third suit was filed on behalf of Randolph Guilbeau, who seeks judgment in the sum of $168.94 against Traders and General Insurance Co. and A. B. Nolan for damages to his automobile resulting from the collision of January 24, 1950.
An intervention was filed by Travelers Insurance Company in Richard’s suit for personal injuries, alleging that should any *536 judgment be rendered against the Travelers Ins. Co. in the suit for workmen’s compensation, that intervenor is entitled to set off against the amount it is condemned to pay petitioner any sum that may be awarded petitioner against Traders & General Ins. Co. and A. B. Nolan in the personal injury suit, and that intervenor is entitled to attorney’s fees in the sum of $1,000 for prosecuting . said intervention.
An intervention was also • filed by ' the State'Hospital Board of thé State of Louisiana, in the workmen’s compensation suit for judgment in solido against plaintiff and defendants' in the- amount of $35, with interest and court costs 'and $5 for attorney fees, - for hospital, services and treatment rendered to plaintiff..
Exceptions of' no cause and no right of action were filed' to' the' intervention of Travelers Insurance 'Company in the personal'injury suit1 by both plaintiff and defendants therein, which exceptions were referred to the merits. Separate judgment's were rendered in each' of the suits: In the suit by Richard for workmen’s compensation he recovered judgment for permanent total disability in the sum of $30 per week from November 10, 1949,' during the continuance of his total disability and up to a period of 400 wéeks, but'was dis'allowed the penalty arid attorney fees.' ■ Oh, the'intervention by the Hospital Board there was judgment against plaintiff and defendants in solido in the bum óf $35, not allowing interest, cost and attorney fees.
In the suit by Richard for personal injuries arising out of the automobile accident, the claim of Richard was disallowed and petitioner’s suit was dismissed. In the suit by Guilbeau for damages to his automobile, judgment was rendered in favor of petitioner in the sum of $168.94. Appeals have been made in each of the said suits.'
In the workmen’s compensation suit' by Richard against Travelers Insurance Co. and Hudson Engineering Corp., the said Richard has timely filed his.answer to the appeal, in accordance with Article 890 of the La. Code of Practice, asking that his judgment be amended by awarding appellee the penalties and attorney’s fees as prayed for in the original petition. In the same suit, the State Hospital Board has timely filed its answer to the, appeal, asking that its judgment be amended by awarding to intervenor, judgment in the amount of $35, plus interest, from date of judicial demand' until paid and for all costs, including the sum of $5 for attorney’s fe.es, in accordance with LSA-R.S. 46:15. '
As to the suit for workmen’s compensation, there is no question but that petitioner’s employer . was engaged in . a 'hazardous occupation which would come under the Employer’s Liability Act. Furthermore, there is no question but that the injury to petitioner was suffered during the scope and course of his employment with the.Hudson Engineering Corporation. We believe that the evidence conclusively shows-that Richard was totally disabled from his-injuries of November. 10, 1949,. which .are-the basis of the workmen’s compensation, suit. All of the experts testifying, and there-were four,in number, stated that the injury-to petitioner’s back was of such a nature that any slight jar or twist could aggravate-the condition and cause sharp pain and suffering. There was testimony to the effect, that .a serious and involved surgical operation could repair the injuries, however, in, the absence of said operation any movement, such as bending over to tie his shoestrings, could cause a flare-up, or aggravation of the injury. , In view of such evidence,. we believe that it was conclusively-shown that petitioner was totally and permanently disabled from performing any employment of a reasonable character to his-occupation as a finished carpenter.
At the time of the automobile accident of January 24, 1950, the petitioner, Richard, had recovered to such an extent from his original injury as to be able to get around well. By such statement we by no means believe that he was able to perform the duties of a carpenter such as climbing a ladder, scaffold, etc. At the time of the second accident, petitioner, Guilbeau and Guilbeau’s wife were riding in Guil-beau’s car, all three. riding in the front seat, with Richard on the right, Guilbeau *537 driving, and Guilbeau’s wife riding in the middle. As they approached Nolan’s home • at a speed of 30 to 35 miles per hour, Nolan backed out of his driveway into the highway along which Guilbeau’s car was pro■ceeding. It appears that' Guilbeau swerved to the left to avoid the backing truck of Nolan, but the rear end of the Nolan truck sideswiped the right side of the Guilbeau ■car denting it some two' or three inches just below the windows! ■ As a result of this accident, the door on the' right side of 1 Guilbeau’s car could not he opened and 'the only way that Richard could get out of the car was to slide under the steering wheel and get out on the opposite side of the car. Petitioner'stated on' examination that the jar of the accident was slight. Guilbeau stopped his car, and he and petitioner Richard got out and spoke to Nolan about •the accident, Nolan advising them to have • an estimate made of the damage while they were in town. Richard and Guilbeau then got into Guilbeau’s car and drove to •Opelousas, where they went to a garage and had an estimate made. During their visit 'to town, Richard visited his doctor who examined him. The doctor testified that there were no cuts, scars or bruises from the accident, and that he asked Richard if he was suffering any pain from the accident — whereupon Richard replied “No”. After spending some time in Opelousas, the ■parties returned -to Nolan’s house where Richard and Guilbeau got out of the car to speak to Nolan. , After the conversation with Nolan, they again got into. Guilbeau’s ■car and drove to Guilbeau’s house, where Richard got into his own car and drove to his house. Richard testified that the first time he felt a pain in his back was when he got out' of' Guilbeau’s car .on their arrival at Guilbeau’s house. In spite of a sharp pain, he claims, and was substantiated by Guilbeau, that Richard drove tó 'his own house alone, a distance of some 2y2 miles. Later the same day the Guilbeaus and Richard returned to town in the Guilbeau car. ■On the occasion Richard was seated on the right front seat, and Mrs. Guilbeau was on the rear seat. On the way to Opelousas they stopped to pick up Mr. Nolan. It was not until the return trip to Opelousas that Richard complained to Guilbeau of a pain in his back. In other words, subsequent to the accident of January 24, 1950, Richard had gotten in and out of Guilbeau’s car some five tiriies before he claims that he felt any pain in his back. He had gotten in and out of Guilbeau’s car some two additional times, and had driven his own car for some distance before he complained to Guil-beau of pain in his back. In the meantime, he had been examined by .his own physician who found no' bruises or injuries resulting from the accident of January 24, and told the doctor that he was suffering no pain. The experts testified that there was no additional injury after the second accident. Dr. LeNoir, who examined Richard, both before and after the automobile accident, testified that no additional injury occurred as a result of the second accident. Dr. Le-Noir, an orthopedist, testified on behalf of Richard. He testified as follows:
“Q. Doctor, isn’t it your opinion' that, as a result of your examination, that no additional injury 'had occurred as a result of ■ the second accident, which occurred on or about January 23, or 24, 19:50? A. Yes. ' ;
“Q. Wasn’t it- your opinion on December 8, 1949, .that the patient’s condition was such that he was unable to do any work? A. Yes.”
Dr. LeNoir further testified that the increased pain suffered by Richard on January 24, 1950, was merely a' flare-up or aggravation of the original. condition. Siich ■could have been caused by any movement such as bending over to tie a shoestring or stepping off a curb.
Dr. Battalora, another orthopedist, testified substantially as did Dr. LeNoir. He, however, had riot examined Richard prior 'to the automobile accident and was, therefore, unable to tell whether the condition of Richard had changed as a result of said accident.
We believe that the petitioner, Richard, has failed to substantially prove that the pain suffered on January 24, 1950, was caused' by the accident of that date. The evidence shows that such pain was not felt until some three or four hours after the *538 accident. It was shown that any movement iby him could have caused a flare-up of the condition existing after the original injury of November 10, 1949. We, therefore, find no error in the ruling of the lower court in dismissing Richard’s suit for personal injuries resulting from the automobile accident of January 24, 1950.
The suit by Guilbeau for damages to his automobile is for the sum of $168.94, plus interest and costs. We believe that the evidence shows, without doubt, that Nolan backed his vehicle into the highway without regard to oncoming traffic. The proximate cause of the resulting accident was due to the negligence of Nolan. The highway, along which - Guilbeau was proceeding was gravelled,-and he was at such a short distance from Nolan’s driveway as to 'be unable to do anything to avoid the impending collision. Mr. Guilbeau testified that his car was a 1934 Ford Fourdor Sedan. No evidence was introduced to show the value of the car at the time of the'accident. Mr. Guilbeau could not remember the last time, prior to the accident, he had had any repairs made to the car. He had paid $250 for the car in the year 1945 or 1946. Mr. Guilbeau testified that he junked the car sometime during the summer of 1950, at which time he purchased another car. He testified that he could not sell it for $50, however, the evidence does not show when he attempted to sell it. Although the estimate for repairs from the collision shows the sum of $168.94, the evidence indicates that such estimate includes certain repairs which were needed prior to the accident. The damages resulting from the accident were never repaired by Mr. Guilbeau.
Because of the incompleteness of the evidence as to the damages to the Guilbeau car, we are unable to fix damages in the suit by Mr. Guilbeau. However, we believe that some loss was suffered by him, and will remand his suit to the lower court for further evidence on the question of damages to Guilbeau’s car.
As stated above, although we have considered the three suits in this one opinion, separate judgments will be rendered. As to the instant suit 'by Richard for personal injuries sustained in the automobile collision of January 24, 1950, we believe petitioner has failed to prove his case. Although the said accident could have easily caused the sufferings complained of, the evidence conclusively shows that such suffering could just have easily been caused by any movement of Richard's ¡body. In view of the interval of time which elapsed between the accident and his complaint of pain, and the motions through which Richard went during said interval of time, we feel that the accident was not the cause of any injury or suffering of Mr. Richard. Our conclusions therefore are that there were no errors shown in the judgment of the lower court, and said judgment will be affirmed with costs.
As to the compensation suit of Richard against Travelers Ins. Co. and Hudson Engineering Corporation, we think that same should be amended and as amended affirmed in the following respects. As mentioned previously herein, the judgment of the lower court only allowed the State Hospital Board judgment in the amount of $35, whereas, in their intervention as well as in their answer to the appeal, they asked for judgment in the amount of $35, to cover the cost of services rendered the said plaintiff together with interest thereon from date of judicial demand until paid and for all costs hereof, including the sum of $5 for attorney’s fees. We think that the said judgment should be amended so as to be corrected accordingly.
As stated previously, the plaintiff, Richard, in his suit for compensation had likewise asked for 12 per cent penalty plus $1,250, as attorney’s fees, as provided by LSA-R.S. 22:658, which was disallowed by the lower court. We think that the compensation judgment should be amended so as to inclúde penalties and attorney’s fees as is provided by the herein referred to statute and particularly the case of Wright v. National Surety Corporation, 221 La. 486, 59 So.2d 695. The big question involved here, however, is whether or not the defendant, Travelers Ins. Co., discontinued plaintiff’s compensation capriciously, un *539 lawfully and arbitrarily, as of February 3, 1950, and if so then the plaintiff would be entitled to the penalties and attorney’s fees. In that connection, we refer to the testimony of Dr. W. J. Briley, who was a witness of the Travelers Ins. Co. and was treating the plaintiff after the first accident and likewise examined the plaintiff on the day of the second alleged accident.
In his direct examination, he gave this ■testimony:
“Q. At any time in the course of your treatment, did you make any statement to Mr. Richard as to when you thought he would be able to resume work? A. Yes, I did.
“Q. Do you know on what date you made such an estímate? A. Approximately the 18th of January 1950.
“Q. And at that time, what was your estimate as to when he would he able to resume his duties? A. According to the response that Mr. Richard was getting from treatment, it was my opinion that he was responding satisfactorily and that he may be able to return two weeks hence, depending upon the findings at that date of examination.’’
Then again under cross-examination, the following testimony was given by Dr. Bril-ey:
“Q. Doctor, during the period from November 10, 1949, up to January 24, 1950, on the occasions on which you examined Mr. Richard, would you say that on any of those occasions he was capable of performing work as a carpenter involving stooping, bending, climbing on scaffolds and lifting? A. At that time, no, 'Sir, I don’t think he could perform his duties satisfactorily.
“Q. You have stated that on January 18, 1950, you had told Mr. Richard that he would be able to return to work within a week dr so? A. I said he may be able to depending upon how his condition progressed — no definite—
“Q. Did you have reference' to light work or full heavy work of the type he was doing before ? A. He perhaps could have returned to work with some reservations and the type of work.
“Q. What reservations do you mean, Doctor? A. It is my opinion that perhaps Mr. Richard could not climb or do any heavy lifting.
"Q. Doctor, when you examined Mr. Richard on January 18, 1950 did you make any estimation as to how long it would be before he could return to full work? A. No, sir, I didn’t not a full' estimate.
“Q. You stated that the last time you examined Mr. Richard was on what day — I think it was November 29, 1950, is that right? A. That is right, Sir.
“Q. What was his condition at that time with regard to that ability to perform work as a carpenter? A. It is my opinion that Mr. Richard was unable to perform his duties as a carpenter at that time.”
There is no question that the condition of the plaintiff was worse after the second alleged accident but as stated hereinabove, we are inclined to believe that his condition after the second accident was a flareup of the first accident and had no connection with the automobile accident. There is no question in our minds that the plaintiff was entitled to compensation on the basis of total permanent disability on the date of January 24, 1950, and that the same is true on the date of February 3, 1950, when his compensation payments were discontinued. If the plaintiff was entitled to compensation up to and immediately prior to the time .of the second accident, we think it likewise true that he was entitled to compensation after the said automobile accident. No evidence was offered to show why plaintiff’s compensation was discontinued on February 3, 1950, other than the fact that he was involved in a second accident. From all of the medical testimony, we come to the conclusion that Richard was disabled and entitled to compensation on the day prior to the second accident and from all indications and facts he still would have been disabled and entitled to compensation on February 3, 1950, regardless as to whether he had or had not been involved *540 in this second accident: Under the circumstances as herein found, we do not believe that the Travelers Ins. Co. was justified in their action, but to the contrary, believe that its action was arbitrary and without probable cause.
For these reasons, the judgment of the plaintiff should be amended so as to include 12 per cent penalty on the compensation payments dye more than 60 days and in addition, an attorney’s fee of $500.
For the above and foregoing reasons, the judgment of the lower court in the case entitled Louie A. Richard v. Traders & General Ins. Co. and A. D. Nolan is affirmed. The cost of this appeal to be paid by petitioner.
Judgment affirmed.