70 So.2d 697 (1954)
DAIGLE
v.
GREAT AMERICAN INDEMNITY CO.
No. 3784.
Court of Appeal of Louisiana, First Circuit.
January 29, 1954.
Rehearing Denied March 22, 1954.
Writ of Certiorari Denied April 26, 1954.
*699 King, Anderson & Swift, Lake Charles, for appellant.
Carmouche, Martin & Wilson, Lake Charles, for appellee.
ELLIS, Judge.
The defendant has appealed from an adverse judgment in which the plaintiff was awarded compensation for total and permanent disability in the sum of $30 per week during disability, not to exceed 400 weeks with interest at the rate of 5% per annum on each overdue payment from its due date until paid, subject to a credit for compensation paid, and a penalty of 12% on all weekly compensation payments 60 days over due and a like penalty on all such payments as might become 60 days over due in the future, together with attorneys' fees in the sum of $500.
The plaintiff filed an answer to the appeal in which he requests 10% of the amount in dispute as damages caused by a frivolous appeal under Article 907, Code of Practice.
The only issues before this court are the contentions of the defendant that the lower court erred in finding the following:
"A. That the appellee is totally and permanently disabled within the provisions of the Louisiana Workmens Compensation Act;
"B. That the appellee is entitled to penalties by reason of appellants refusal to pay compensation;
*700 "C. That these penalties should include $500 attorney fees and 12% interest on all future payments of compensation unpaid for a period of 60 days."
The defendant's assignment of errors will be discussed in the order listed.
Defendant recognizes the general rule that disability is deemed total disability to do work of any reasonable character within the intendment of the law, whenever it appears that the employee, due to the injury, is unable to perform work of the same or similar description that he is accustomed to perform, and cites Knispel v. Gulf States Utilities Co. Inc., 174 La. 401, 141 So. 9, and Morgan v. American Bitumuls Co., 217 La. 968, 47 So.2d 739; both of which were decided by our Supreme Court and are the law. In the latter case the general rule was recognized and the Court found that the employee was able to perform the same or similar work to some degree and was therefore entitled to partial permanent disability. It is the contention of the defendant that plaintiff is not totally and permanently disabled, but in the alternative at most he is partially and permanently disabled.
The testimony reveals that the plaintiff was a man 60 years of age and on the date of his injury and prior thereto had been employed as a carpenter's helper whose duties consisted of hard manual labor in that he was required to assist in the building of scaffolds, to lift heavy lumber, tool boxes filled with tools estimated to weigh from 60 to 70 pounds, and to carry skill saws weighing approximately 50 pounds, and to climb, stack lumber, bend, twist, turn, in the performance of his duties, and that on September 24, 1951 while assisting in the stacking of lumber on a scaffold, fell a distance of 13 or 14 feet and struck his back, rendering him unconscious. As a result of the accident he suffered a simple fracture of the sternum, contusions of the face and forehead and a severe compression fracture of the sixth and eighth dorsal vertebrae and a minimal type of compression of the fifth dorsal vertebrae.
He was paid compensation until the 12th day of October, 1952, at which time the payments were terminated and further compensation refused and this suit was filed on Nov. 13, 1952.
Plaintiff was a good workman and had never drawn compensation payments prior to this injury. He had worked 20 years for one firm prior to being employed by the present insured and the record shows that he voluntarily left the employ of his previous employer.
Dr. Marek testified that the fractures of the 6th and 8th vertebrae were severe in that one was "completely squashed" and the other "squashed," and although he was a radiologist he had no hesitancy in stating that from these pictures and the examination of the appellee he considered him disabled. His testimony, when asked if he considered the appellee disabled was as follows:
"Q. Doctor, on the dates you examined this claiment in your opinion do you consider him disabled? A. I most certainly do. I think it is probably the worst injury a person could have, a fractured vertebra, because after healing we are not able to put that back and heal like ordinary long bones of the body.
"Q. Would you consider this disability permanent in nature? A. I do."
On cross-examination he stated that the plaintiff would never completely recover. It was definitely the opinion of this doctor that the plaintiff was going to be limited in the amount of work he could do.
Dr. Campbell in whose charge the plaintiff was placed by the insurance company or its representative, testified that he had first seen plaintiff as a patient on November 20, 1951, and that he had found compression fractures of the 6th and 8th dorsal vertebrae and that he placed him in a brace to support his dorsal spine during its healing period. He further stated that he examined and treated plaintiff over a period of a year following his injury and that *701 during that entire period it was his opinion that plaintiff was incapable of performing the work of a carpenter's helper which job involved "stopping, bending, climbing, on scaffolds, lifting objects say up to 40 pounds, climbing ladders or working as a common laborer." It was his further positive testimony that plaintiff's inability to perform the duties of a common laborer were permanent in nature. The latter opinion was based upon the injuries suffered and his age.
Dr. Charles V. Hatchette testified that he first examined the plaintiff on March 3, 1952 and found him cooperative and mentally alert. He also found pain on pressure over spine of 6th, 7th and 8th dorsal vertebrae, and the x-ray examination showing a fracture of upper third of the sternum with forward displacement of the lower fragment, and also the compression of the bodies of the 6th and 8th dorsal vertebrae with a questionable compressed fracture of the 5th dorsal vertebra. It was his opinion that the plaintiff was "very definitely disabled" and "that he was not able to perform any of his regular duties." This doctor further stated that the patient's disability was indefinite and that he should be re-examined at a period of three months and periodically thereafter until some decision could be made with reference to any permanent disability. He examined plaintiff again on June 23, 1952. It was his opinion that at the end of three additional months from the time of the examination that the plaintiff might be better and more completely healed, but that he still was not ready to return to any type of heavy work. He felt that plaintiff was perfectly capable of doing light duties such as "menial tasks about the house or some work in his garden but I do not believe that he can return to heavy duty." He thought that an additional three months "will give us the story on the ultimate outcome of his injury." He re-examined plaintiff on December 2, 1952, and his findings were essentially the same and it was his opinion "that Mr. Daigle had some permanent disability as a result of postural changes and that he doubted that he would recover a great deal of function as the result of these fractures, and he should be allowed permanent disability in an amount of approximately 35%. He felt then and does now that Mr. Daigle would be unable to continue to work as an oil field rough neck or perform any heavy duties including heavy lifting or anything that would be a strain on his upper back regions. This doctor was further asked if he thought that plaintiff would ever be able to perform the work of a common laborer and he answered, "In view of his age I doubt it."
Considering all the testimony we are of the opinion that plaintiff was totally and permanently disabled and unable to perform the same or similar work and that the learned judge was correct in so holding.
The next proposition to be considered is that portion of the judgment which awarded penalties and attorneys' fees under LSA-R.S. 22:658. Under this statute, insurers shall pay the amount of any claim due within 60 days after receipt of satisfactory proof of loss from the insured employee or any party in interest, and failure to make such payment within 60 days after receipt of such proof and demand therefor, when such failure is found to be arbitrary, capricious or without probable cause, shall subject the insurer to a penalty in addition to the amount of the loss of 12% damages on the total amount of the loss, together with all reasonable attorneys' fees for the prosecution and collection of such loss.
Counsel in his brief contends that as compensation was paid until October 12, 1952 and the suit filed on November 12, 1952 and no compensation became due and payable until October 19, 1952, therefore, only a period of approximately twenty-five days had elapsed from the date of the last payment of compensation until suit was filed. Counsel further contends that under the law there must be an arbitrary refusal to pay compensation within 60 days after receipt by the insurer of satisfactory proof of loss and demand, and that to have a proof of loss and a demand therefor, there must be a loss, which could not exist until a compensation *702 payment became due. Further, until a compensation payment had remained unpaid for a period of 60 days there was no right to penalty.
It is necessary that we reach an understanding as to the meaning of the term "proof of loss" as it applies to an injured employee in a compensation case. This term means that an employee should submit satisfactory proof of his right to come under the compensation statute, the accident, his injury and resulting disability which, expressed differently, might be termed loss of ability to perform the same or similar work in which he was engaged at the time of his accident and injury. Any monetary loss, that is, loss or decrease in wages, would be incidental and a result of the employee's loss of ability to perform the same or similar work. Bearing this in mind, let us examine the record and see whether the plaintiff had ever satisfied the requirements of the law necessary or as a condition precedent to the collection of penalties.
The plaintiff was injured on September 24, 1951 and was paid weekly compensation for total, permanent disability until October 12, 1952. It can therefore be stated that the defendant had received satisfactory proof that the plaintiff had suffered an accident and injury and had a permanent and total loss of ability to perform the same or similar duties as those in which he was engaged on the date of the accident. Plaintiff had, therefore, satisfied the law with regard to proof of loss. The defendant insurance company, after recognizing the right of the plaintiff to compensation for permanent and total disability by assuming responsibility by way of payment of compensation for more than a year, cannot now deny that the plaintiff had met the requirements of the law by furnishing satisfactory proof of loss as is contemplated under the penalty statute. It is true that the defendant insurance company could have withheld the payment of compensation up to the sixtieth day after receipt of satisfactory proof of plaintiff's employment, the accident, injury and resulting loss of ability to perform the same or similar duties, but they chose to immediately recognize plaintiff's loss and to begin compensation payments immediately.
After satisfactory proof of loss is furnished, it is the duty of the insurer within sixty days to pay compensation as provided by law and to continue doing so during the full period of disability. In the present case, it was the duty of the defendant insurer to continue payment of compensation to the plaintiff for the full period of his disability, and if the defendant insurer chose to cease such compensation payments, it did so at its peril, or at the risk of plaintiff being able to show that the refusal to continue the payments was arbitrary, capricious or without probable cause.
Defendant contends, however, that it had the right to discontinue the payments and it was then necessary for the plaintiff to furnish another proof of loss and to wait sixty days before filing his suit; that should he fail to do either he could not in any event collect the penalties provided by law. The plaintiff is only required to furnish one proof of loss and this he did, and when the defendant discontinued his compensation payments, amicable demand was made and refused, and twenty-five days after the `first discontinued payment was due, suit was filed. Defendant in its answer admits the amicable demand for payment after its discontinuance. There was no reason for plaintiff to wait 60 days before filing his suit.
The case of Sbisa v. American Equitable Assur. Co. of New York, 202 La. 196, 11 So.2d 527, 534, 145 A.L.R. 332, decided by the Supreme Court, is controlling under the facts and circumstances of the case at bar. In the cited case plaintiff was the owner of two sound trucks, one of which was destroyed by fire and was insured at the time by the defendant. The defendant received notice of the fire and furnished the plaintiff with the blank form for proof of loss which was duly filled out and sworn to' by the plaintiff. Shortly after the proof *703 of loss was filed, the defendant required plaintiff to furnish a supplemental proof of loss as it was not satisfied with the statements contained in the original. The defendant, being still dissatisfied with the proofs of loss submitted by plaintiff and the statements made by him, thereupon requested and did examine plaintiff under oath, at which time it was discovered that plaintiff had made a number of erroneous statements and that items aggregating the sum of $1,585 were incorrect. Subsequently, defendant, taking the position that plaintiff had been guilty of false swearing with respect to the statements made by him in the proof of loss and his examination under oath, denied any and all liability to plaintiff for the loss, maintaining that all of his rights for claims against it under the policy contract had been forfeited. Plaintiff thereafter filed suit in the District Court and was awarded a judgment for $2,000 plus the penalties and attorneys' fees provided by Act 59 of 1921, Ex.Sess.
The first contention of defendant on appeal as shown on rehearing in the Supreme Court was that the penalty and attorneys' fees were erroneously awarded to plaintiff because he did not, as a condition precedent to recover, make a demand for payment as required by Section 3 of Act 59 of 1921, Ex.Sess. In reaching a decision in this case the Supreme Court stated:
"This section of the statute, which has been quoted in full in our original opinion, provides in substance that, whenever loss or damage shall be suffered by the assured as a result of fire to property insured under a policy of fire insurance, it shall be the duty of such fire insurance company, upon receipt of proofs of loss from the assured, to pay the amount due under its policy within sixty days thereafter `or if the said proofs of loss are not satisfactory to the company, it shall be the duty of the company to proceed under the terms of the policy or policies to ascertain and adjust the amount of the loss and its liability under the terms of the policy or policies and to make payment of the amount due under policy or policies to the insured within sixty days from date upon which it received the proofs of loss offered by the assured, and should the company fail to pay, within said time the amount due the insured under the policy after demand made therefor, such company shall be liable to pay the holder or holders of such policy in addition to the amount of the loss' 25% damages on the total amount of the loss together with reasonable attorney's fees. (Italics ours.)
"It is pointed out by counsel for the defendant that the foregoing statute, being a penal one, should be strictly construed and that, since it clearly appears from the pleadings and proof submitted in the case that the plaintiff failed, prior to filing suit, to make demand for the payment of the amount due under the policy, recovery of the penalties and attorney's fees should be denied.
"While we readily agree with counsel that the statute (in so far as the penalties are concerned) is to be given a strict interpretation, this does not mean that literal compliance by the assured is to be regarded as essential where the action of the insurer can be considered as relieving the insured of such compliance. On the contrary, we are convinced that the penalties were rightly imposed in the instant case because the defendant, by reason of its absolute denial of liability to plaintiff for the amount due under the policy after the proofs of loss had been submitted, must be held to have waived the requirement of the statute respecting the necessity of a demand.
"It is conceded in this matter that the assured suffered a loss which was covered by the policy. Proofs of loss were duly submitted by the plaintiff. If the insurance company was not satisfied with these proofs of loss, it was incumbent upon it, by the provisions of section 3 of Act No. 59 of 1921, Ex. Sess., to undertake to adjust the loss and pay to the assured the amount *704 which it considered to be due. Instead of following this course, the defendant took the affirmative stand that there was no liability whatever under the policy because the plaintiff had sworn falsely in his proofs of loss. In view of this, it would have been futile for the plaintiff to have made demand on the company for payment of the loss. Obviously, the denial by the company was tantamount to a concession by it that the filing of the proof of loss constituted an adequate demand. One does not deny prior to the receipt of a claim. While the statute plainly contemplates a demand, other than the mere filing of a proof of loss and the filing of a suit in order for the penalties to attach, the requirement applies only in cases where the proof of loss has been filed and the company has passively denied liability by failing to make payment within sixty days from the date upon which it received the proofs or where it has failed to adjust the loss and tender to the assured the amount which is due under the policy. But to say that in a case like this, where the proof of loss has been submitted and the company has notified the assured that it will not pay, that the assured is required to go through the useless ceremony of making another demand on the company, in order to be entitled to the penalties, would be to resolve that the plaintiff should treat the denial of the company as meaningless. The strict interpretation which is to be accorded to the statute does not require that we reach such an absurd consequence and, particularly so, in view of the well-established jurisprudence that, in cases where a putting in mora is exacted, it is unnecessary to do so where the debtor denies the obligation. See Louisiana Farms Co. v. Yazoo & M. V. R. Co., 179 La. 539, 154 So. 445 and authorities there cited, also Wadkins v. Wilson Oil Corp., 199 La. 656, 6 So.2d 720.
* * * * * *
"* * * Therefore, under the circumstances, the company could have adjusted and ascertained the loss or, in any event, that part of the loss over which there was no dispute. But, in spite of the fact that the statute required this to be done, the company denied any and all liability on the ground that the policy had been forfeited because the assured swore falsely with respect to certain items contained in the proof of loss. In the circumstances, it took its chance upon the judgment of the court on the question of its liability and, having been unsuccessful, the assessment of the penalties and attorney's fees followed as a matter of course."
In view of the fact that plaintiff affirmatively alleged amicable demand for payment but to no avail, and the defendant in its answer admitted this allegation and denied any liability, it must be held to have waived the requirement of the statute respecting the sixty day delay.
In the present case as in the cited case, the proof of loss had been submitted, the defendant had acknowledged the plaintiff's loss and recognized it as being total permanent disability up to the date on which it discontinued any further payments. Upon the discontinuance of the payments the plaintiff made demand upon the defendant who refused same and took the position that there was no further liability. Under these facts the plaintiff was not required to go through the useless ceremony of waiting 60 days to see whether the defendant meant what it said in order for it to be entitled to the penalties.
In view of the fact that the Supreme Court held that the requirement of the statute in the cited case respecting the necessity of demand was waived by the action of the defendant insurance company in that case, then there is no reason why it would not be equally true that by the actions of the defendant insurance company in the case at bar in denying any further liability to the plaintiff as the result of plaintiff's demand it had not waived the 60 day period set forth in the statute under consideration. In the present case as in the cited case the defendant *705 insurance company, under the facts and circumstances, took its chance upon the judgment of the court on the question of its liability and having been unsuccessful the assessment of the penalties and attorneys' fees followed as a matter of course.
The defendant insurance company evidently had made an investigation prior to its discontinuance of the compensation payments to determine whether or not plaintiff's physical condition had improved to where he could do and perform his usual work or whether his total disability continued, and therefore when the plaintiff made demand for a continuance of the payments or for the defendant insurance company to recognize its obligation to plaintiff, the defendant insurance company denied any further liability and removed the necessity for any further delay on the part of the plaintiff in taking action. Under the facts and circumstances plaintiff's suit was not premature, and if plaintiff bore the burden of proof by showing defendant's denial of any further liability and refusal to continue the payments was arbitrary, capricious or without probable cause, the imposition of penalties was in order.
Counsel for defendant next contends that in any event the refusal to continue the compensation payments in this case was not arbitrary or capricious. With this we cannot agree as all the medical testimony is to the effect that the plaintiff was totally and permanently disabled to perform the duties of a common laborer necessary to employment as a carpenter's helper. All of these doctors were paid by the insurance company and all but the first doctor who treated plaintiff when he was received in the hospital were chosen by the insurance company. There is no evidence that these doctors ever advised the defendant that the plaintiff had recovered. The only testimony offered was by the plaintiff who used the defendant's doctors. If the refusal to pay compensation in the case of Wright v. National Surety Corporation, 221 La. 486, 52 So.2d 597, 59 So.2d 695, was held to be capricious and arbitrary under the facts in that case, then there is no doubt that the refusal in this case was capricious and arbitrary. In the Wright case, supra, there was a most serious dispute at least as to the degree of disability. There is no evidence to justify the discontinuance of the payments to the plaintiff in the present case. See also Richard v. Traders & General Insurance Company, La.App., 62 So.2d 533, in which this Court assessed the penalties under the statute where no evidence was offered to show why plaintiff's compensation was discontinued.
Defendant objects to the awarding of attorney fees and also the amount, basing same upon a statement in his brief to the effect that "there is no proof in the record as to the obligation to pay attorney's fees by the appellant, or as to their value. In the absence of proof of the value of attorney's fees and an obligation to pay, they cannot be allowed. Rhodes v. Collier, 215 La. 754, 41 So.2d 669." The case relied upon is not applicable.
Under LSA-R.S. 22:658 the imposition of the penalties and attorney fees is mandatory where the facts show the refusal to pay the compensation due is arbitrary, capricious or without probable cause. Such provisions have been interpreted and have been held to be mandatory by our courts. In Crowell v. New Hampshire Fire Ins. Co., La.App., 147 So. 762, 767, the Court of Appeal of the Second Circuit stated:
"Plaintiff has prayed for 12 per cent., as damages, and for reasonable attorney's fees. The courts no longer have any discretion in this matter, where liability is denied and recovery had, it is mandatory on the court to allow them. Brooks v. Liverpool & London & Globe Ins. Co. (La.App.) 144 So. 788; Isaac Bell, Inc., v. Security Ins. Co., 175 La. 599, 143 So. 705.
"In cases of this kind, there is no necessity for proof to be offered as to the value of the services of an attorney. The court can best fix the fees. Brent v. La. State Life Ins. Co., *706 7 La.App. 99; Brooks v. Liverpool & London & Globe Ins. Co. (La.App.) 144 So. 788; Sigrest v. Fed. Ins. Co., 14 La.App. 55, 129 So. 379; Hunt v. Hill, 138 La. 583, 70 So. 522; Dorsey v. His Creditors, 5 Mart. (N.S.) 399."
While the appellant raises a question as to the award by the Lower Court of 12% interest on future compensation payments over 60 days past due because he says that the plaintiff only prayed for 12% on all compensation payments due on the date of the rendition of the judgment and therefore the judgment has exceeded the prayer, and while a literal interpretation of plaintiff's prayer might give weight to appellant's objection to the judgment on this ground, a review of the petition filed by plaintiff shows that it contains an allegation that "The defendant has arbitrarily and without just cause refused to pay compensation as provided by law and is liable for penalties of 12% of all compensation payments due at the date of judgment, and for reasonable attorney's fees to be determined by this Court, as provided for by La.Revised Statutes of 1950, 22:658," and we find in the prayer of the petition that he requests full, general and equitable relief. Considering the allegation of the petition and the definite reference to the penalty statute and the prayer for equitable relief, we believe that the lower court was correct and justified in following the statute in the awarding of the penalties rather than the misconstruction as contained in the prayer of plaintiff's petition.
As to plaintiff's contention that he is entitled to damages for a frivolous appeal, under the holding in Broussard v. Acadian Production Corporation, La.App., 196 So. 82, and Tri-State Hospital, Inc. v. Reliance Industrial Life Insurance Co., La. App., 191 So. 605, we do not consider these cases applicable. In the Broussard case there was no defense offered and when the case was called for argument in the appellate court, counsel for defendant did not appear nor did he file a brief and the Court stated that the record was sufficient to convince it that the appeal was taken for delay only, consequently the damages were awarded for a frivolous appeal. In the Tri-State Hospital case the Court found that the appeal was taken for delay and awarded the damages. No such facts exist in the present case. In fact, this decree and the difference of opinion as shown by the dissent herein dispel any question of a frivolous appeal, and damages will accordingly be denied.
For the above and foregoing reasons the judgment of the District Court is affirmed.
CAVANAUGH, Judge (dissenting as to penalties).
I concur in the majority opinion in holding that the plaintiff is totally disabled to do work of a reasonable character and is entitled to compensation as for total disability from the date his compensation payments were discontinued by the defendant. I disagree with the majority opinion in holding that the plaintiff is entitled to recover the statutory penalty and a reasonable attorney's fee under LSA-R.S. 22:658 for the reason that plaintiff's suit was prematurely `filed before the limitation period of 60 days had expired for the adjustment of his claim.
This statute is penal in nature and before the insured can claim the benefit of the penal provisions, it is required that he show a literal compliance with its provisions. The defendant insurance company had 60 days from the date of demand, after it discontinued his compensation payments, to make an investigation in order to determine whether or not his physical condition had improved to where he could do and perform his usual work, or if his total disability continued, without being subjected to the penal provisions of this section requiring it to pay a 12% penalty and a reasonable attorney's fee. Its discontinuing compensation payments did not make it liable for a penalty of 12% and a reasonable attorney's fee until the lapse of 60 days after demand for the resumption *707 of payments. If, after the lapse of the 60 days it had not adjusted the claim and its refusal to pay was capricious or unreasonable, then it would be subject to the penalty of 12% and the attorney's fees.
By the ruling of the Court in this case, an insurer of workmen's compensation liability who suspends compensation payments of an injured employee without first having his physical condition determined by medical experts and that he is able to return to work will always be subjected to a penalty, if the examination and determination is not made while the compensation payments are being made. A literal interpretation of the statute is that it has 60 days within which to make its investigation and determine its liability under the policy without being subjected to suit for the penalty. Now, if it is sued for the penalty before the lapse of the 60 days, can the insured claim the penalty when he has not accorded the right of the insurer to the 60 day period within which to investigate and adjust its liability under the contract? It seems to me that some effect must be given to the 60 day period provided for in the statute, and unless the insurance company has waived it by denial of liability, then the insured's claim for the penalty is prematurely asserted when brought before the 60 day period has expired. The question of whether the insurer's action is arbitrary, capricious and without probable cause does not come into existence under the statute until after the insurer is first accorded the opportunity to investigate and determine its liability under the policy within the 60 day period. Of course, it goes without saying that where it is sued before the 60 days has lapsed under the statute and contract it has not been given the time provided for in the statute to determine what it will do.
The suit in this case was filed on the 25th day after the compensation payments were discontinued without any formal demand being made for the resumption of payments and the incurring of the penalty unless the demand was complied with.
The section of the Insurance Code was taken from Act 168 of 1908 and Act 59 of 1921. Under the cases construing these statutes as far as my examination has gone, the suit was filed always after the proof of loss had been submitted and demand for payment had been made. The 60 days does not commence to run until after such proof and demand has been made. To impose the penalty in a case of this kind against an insurer before the lapse of 60 days without any demand or the furnishing of any medical proof on the part of the plaintiff subsequent to the discontinuance of the payments is to read out of the statute the 60 day period therein provided for and to substitute a shorter period for investigation and adjustment, if the insurer did not have just and reasonable grounds to defend the suit.
We find the following in Vol. 6, Appleman's Insurance Law and Practice, page 509, Section 4037:
"The insured's right to a penalty for a delay in the payment of a loss does not attach until the loss becomes payable under the terms of the policy. Hence, if the insured sues within the stipulated period of time before the loss is payable, no penalties may be recovered. Where policy was not payable until 60 days after proof of loss, a statement assented to by the insurer's adjuster, that a nonwaiver agreement would not delay payment for more than 5 days, did not entitle the insured to immediate payment.
"A policy provision giving the insurer the right to withhold payment until 60 days after an award of appraisers was held to be void, as conflicting with a statute requiring payment within 60 days from proof of loss. And upon a failure of the appraisers to agree, the insured could refuse to submit to a second appraisal after the expiration of the period within which a statute required a loss to be paid."
St. Paul Fire & Marine Ins. Co. v. Womack, 1916, 122 Ark. 396, 183 S.W. 203; *708 Alliance Ins. Co. v. Williamson, 1927, 36 Ga. App. 497, 137 S.E. 277; Globe & Rutgers Fire Ins. Co. v. Jewell-Loudermilk Co., 1927, 36 Ga.App. 538, 137 S.E. 286; Hughes v. Home Ins. Co., 1928, 8 Tenn.App. 292; DeRossett Hat Co. v. London Lancashire Fire Ins. Co., 1916, 134 Tenn. 199, 183 S.W. 720; New Zealand Ins. Co. v. Brewer, 1923, 29 Ga.App. 773, 116 S.E. 922.
Now it is said by the majority that the defendant had notice of the loss since it paid the plaintiff compensation for about a year before he was cut off, and that amicable demand for payment was made. Whether this demand was made on the employer or on the insurer is not reflected by this record. The employer is not subject to the penalty, and, unless a demand was made prior to the filing of this suit on the insurer and 60 days had lapsed between the demand and the filing of the suit, the right to the penalty was premature unless the insurance company denied any further liability and waived these provisions of the statute. The record in this case does not contain sufficient proof to warrant the infliction of the penalties decreed by the Court Below and approved by this court.
Penal provisions in insurance contracts required by statutes are no different from penal provisions in statutory bonds required pursuant to statutes. A plaintiff suing for a penalty, either under an insurance contract, or under a statutory bond, must show a literal compliance with the provisions of the statutes before the penalty can be awarded.
"This statutory grant is in the nature of a penalty, which should not be imposed unless the beneficiary thereof has literally complied with the statutory requirement." Long Bell Lumber Co. v. S. D. Carr Const. Co., 172 La. 182, 133 So. 438, 440.
State v. Miller, 169 La. 914, 126 So. 422; Silver v. Harriss, 165 La. 94, 115 So. 380; Long Bell Lumber Co. v. S. D. Carr Construction Co., 172 La. 182, 133 So. 438; Hammett v. Fire Association of Philadelphia, 181 La. 694, 160 So. 302; Brough v. Presidential Fire & Marine Ins. Co., La. App., 176 So. 895; Tedesco v. Columbia Ins. Co. of New Jersey, 177 La. 142, 148 So. 8; Sbisa v. American Equitable Assurance Co., 202 La. 196, 11 So.2d 527, 145 A.L.R. 332.
For the foregoing reasons, I respectfully dissent from the majority opinion in this case imposing the penalties.