118 So.2d 707 (1960)
Fred DARBY, Plaintiff-Appellant,
v.
Howell JOHNSON, Defendant-Appellee.
No. 4951.
Court of Appeal of Louisiana, First Circuit.
March 3, 1960.
*708 Joseph E. Bass, Jr., Thomas W. Staed, Lake Charles, for appellant.
Charles C. Broussard, Sulphur, for appellee.
Before ELLIS, LOTTINGER and TATE, Judges.
TATE, Judge.
This is a compensation suit. On October 14, 1958, the plaintiff sustained an accident at work, as a result of which the index finger of his left hand was amputated. He was awarded 30 weeks' compensation for the loss of this specific member (LSA-R.S. 23:1221(4) (b)), medical expenses, and costs.
The sole issue raised by this appeal by plaintiff concerns whether the trial court erred in refusing to award him also penalties and attorney's fees under Act 432 of 1958, LSA-R.S. 23:1201.2,[1] because of the *709 allegedly arbitrary and capricious non-payment of compensation and medical expenses undoubtedly due by the defendant uninsured employer.
The undisputed facts show: On October 14, 1958, the plaintiff's left hand was injured. He was brought to the doctor, and his left index finger was amputated the same date. For five weeks, commencing with October 31st and terminating on November 28th, the plaintiff was paid compensation without incident at a weekly rate of $26. The rate was based upon a computation of 65% of weekly wages for a 40-hour week at wages of $1 per hour. In accordance with the customary manner of making wage payments, the employer's office sent these compensation checks to the plaintiff by handing them to his foreman, along with the pay checks of the other employees of the crew, and the foreman would then transmit same through co-employees to plaintiff at his home.
Following a conference with his employer, at which he was dissatisfied with the amount tendered in settlement of his claim, the plaintiff retained a lawyer, who on December 4, 1958, sent the defendant by unregistered mail a demand that the plaintiff's compensation be brought "up to date." The defendant and his office staff denied having received this letter; we are unable to say that the trial court committed manifest error in such finding. In any event, however, the compensation payment for December 4, 1958, in the amount of $26 was not given to an employee to be delivered to the plaintiff, but was held in the defendant's office until some time after this suit was filed on December 16th.
After the suit was filed, compensation payments of the rate of $26 per week were tendered to the plaintiff up through January 16, 1959, at which date an additional $26 compensation payment was also tendered, to cover the first week after the injury.[2] The tender was not accepted by the plaintiff's counsel.
Trial was had on May 7, 1959, at which time the issue of plaintiff's residual disability disappeared from the case. It was then stipulated that the sole remaining issue concerns whether the plaintiff is entitled to recover penalties for the arbitary non-payment of compensation at the weekly rate of $35 admittedly due by his employer during the period it was unpaid prior to trial.
*710 The trial court correctly held that the defendant's non-payment of compensation was not arbitrary so as to entitle plaintiff to penalties, insofar as the plaintiff contends he was entitled to penalties because of: (a) the employer's failure to transmit the check on December 5, 1958, through co-employees, as had been done with prior checks; (b) the employer's failure to issue a check on December 12, 1958, for the payment due on that date; and (c) the employer's failure to pay the plaintiff the amount due for the first week of his injury before suit was filed on December 16, 1958. In the absence of request by the employee that his compensation benefits payments be mailed to him, the employer is required to pay the compensation "at the times and places as wages were payable to the injured employee before the accident", LSA-R.S. 23:1201. As the trial court noted, and accepting its finding that the employer did not receive the notice by mail through his attorney that such payment be posted to him in care of his attorney, there is no proof in the record that the plaintiff would not have received his correct compensation prior to suit by a simple request for it at his employer's office. Under these circumstances we find no arbitrary refusal to pay compensation instanced by the above-noted particulars.
However, we must respectfully disagree with our learned brother's failure to award penalties for the arbitrary and capricious non-payment or non-tender to or for the employee of (a) compensation at the correct weekly rate of $35 and (b) a medical bill of $12.75 for treatment of the plaintiff on the day of the accident.

I. Tender of compensation at an insufficient weekly rate.

The trial court disallowed penalties for the payment of compensation at an insufficient weekly rate because no specific request was made before the suit for compensation at the correct rate and because, in paying or tendering compensation at the incorrect rate of $26, the employer testified that he was relying upon the advice of counsel.
The evidence shows that at all times the defendant employer had conducted his operations on a 5-day work week; that he usually has maintained an 8-hour work-day, but that a few months before the present accident the customary work-day of his employee was increased to 9 hours. The defendant employer testified that the compensation rate of $26 (65% of a $40 weekly wage) had been established because "on previous occasions in talking to my attorney I had learned from him that where you are working a 5-day week that compensation would be paid on the basis of 40 hours, not necessarily on any overtime that might have applied." (Tr. 131-132; see also Tr. 141.)
Plaintiff was tendered compensation at the weekly rate of $26 for the remaining period of the employer's compensation liability. In the defendant employer's formal answer, filed after an exception of prematurity was overruled, he admitted that he was liable for compensation at the weekly rate of $30.88 (which is computed as 65% of the wages, including overtime, for a 5-day work week, with a 9-hour work day), although he did not tender compensation at this rate. Thus the employer's position was that he was entitled to tender compensation based on the rate of pay for a five-day work week.
However, as the trial court noted, allthough earlier jurisprudence may have permitted the computation of compensation on the basis of a five-day work week (see Malone, Louisiana Workmen's Compensation, Section 323), the Supreme Court in Carrington v. Consolidated Underwriters, 1956, 230 La. 939, 89 So.2d 399, reiterated and clarified earlier pronouncements and held flatly that, for purposes of computing the compensation rate of an injured employee, the six-day work week must be employed. This ruling has been consistently adhered to thereafter. Malone, Louisiana Workmen's Compensation Law, Section 323.
*711 There is and can be no good faith dispute whatsoever that the employee was entitled to wages at the rate of $35 per week (the admitted rate of compensation due if a six-day week's wages are used as the basis), and not at the rate of the $26 per week tendered to the injured employee by the defendant employer. Although the employer may have been in good faith in paying compensation at an insufficient rate prior to the present suit, the allegations of the present petition specifically called to his attention that such compensation rate was "inadequate" and that "the law of this State is now well-settled" that a compensation rate of $35 per week (based on the rate of pay for a six-day work-week and not for a five-day week), was the correct one under the circumstances. We cannot say that, subsequent to this judicial demand, the employer's continued and willful refusal to pay or to tender compensation at the correct rate was in good faith and was not arbitrary or capricious, when there is not the shadow of a legal basis to justify such action.[3]
We do not think that the circumstance that an employer may have been in good faith initially, prior to judicial demand, can justify his stubborn and blind refusal thereafter to pay compensation undoubtedly owed.
Thus, that the refusal to pay compensation became arbitrary after suit was filed did not defeat the imposition of penalties in Fruge v. Pacific Employers Ins. Co., 226 La. 530, 76 So.2d 719; La.App. 1 Cir., 71 So.2d 625. There, suit was filed on April 9, 1952, and thereafter payment of compensation was initially resumed and continued until March 30, 1953. On this latter date the defendant again discontinued compensation payments on the ground that current medical reports showed a partial rather than a permanent disabilitya defense found to be totally without merit. The termination of compensation on March 30, 1953, was found to be arbitrary, and the insurer was assessed with the statutory penalties even though the arbitrary refusal had occurred after suit was filed.
Even assuming that the employer resisted payment of compensation at the correct rate upon advice of counsel received subsequent to suit[4], we do not think that such circumstance could exempt from penalty an employer's refusal to tender his undoubted compensation liability when there is no legal basis whatsoever to support such refusal. The cases upon which able counsel for defendant relies (Moore v. Great American Indemnity Company, La.App. 2 Cir., 106 So.2d 771, and Flanagan v. Welch, La.App. Orl., 93 So.2d 36), insofar as not distinguishable from the present situation, we regard to be against the weight of the better authority, which holds that a failure to pay or to tender an amount for which the employer is undoubtedly liable under the compensation act is arbitrary or unreasonable so as to require the imposition of statutory penalties whenever such failure is without legal basis and there is no serious question upon the merits that the disabled employee is entitled to payment of such compensation benefits. Humphreys v. Marquette Cas. Co., 235 La. 355, 103 So.2d 895; Fruge v. Pacific Employers Ins. Co., *712 226 La. 530, 76 So.2d 719; Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695; Hale v. Republic Drilling Co., La. App. 1 Cir., 109 So.2d 268; Cain v. Employers Cas. Co., La.App. 2 Cir., 96 So.2d 527, affirmed, 236 La. 1085, 110 So.2d 108; Patterson v. Cargo Services, Inc., La.App. Orl., 95 So.2d 49.

II. The employer's non-payment of a $12.75 medical bill.

Insofar as the employer failed to pay (until cast for it by the judgment below) the $12.75 medical expenses incurred on the date of the accident, his sole excuse tendered through an office employee was that such failure was an "oversight". The uncontradicted evidence in the record shows that the employer was billed in October, 1958 for this amount, and that the collection department of the hospital telephoned his office to again request payment of this medical bill in January, 1959. In addition, Article 10 of the plaintiff's petition expressly alleges that such medical bill owed by the employer was due and unpaid (Tr. 8), and the defendant's answer denied this allegation (Tr. 51). In view of the above cited jurisprudence, and under these circumstances, the employer's continued nonpayment of the medical expenses demanded both by plaintiff's petition and by the hospital was arbitrary so as to subject him to penalties. See also Hale v. Republic Drilling Company, La.App., 1 Cir., 109 So.2d 268.

III.
The final question before us in this appeal is raised by the defendant's contention that, in any event, statutory penalties cannot be assessed against him because the statute specifically provides that such penalties do not accrue unless the employer has arbitrarily failed to pay compensation benefits "within sixty days after receipt of written notice", which must be sent by registered mail. LSA-R.S. 23:1201.2. (See footnote 1 above.) The defendant then points out that no notice by registered mail was ever sent to him; that prior to suit he never refused to pay compensation (even though it was concededly paid at an incorrect rate); and that prior to suit no period of 60 days elapsed following the last payment of compensation received by the plaintiff.
However, the pleadings reflect that the claimant specifically alleged that compensation was due at the rate of $35 rather than $26 (Article 7, Tr. 6) and that the medical bill of $12.75 was due and unpaid (Article 10, Tr. 8), and the defendant expressly denied these allegations (Tr. 50, 51.) Under similar circumstances, this court has rejected similar contentions advanced by a defendant attempting to exculpate itself from penalties for arbitrary non-payment of compensation imposed by a parallel statute, LSA-R.S. 22:658, penalizing insurers for the arbitrary non-payment of compensation in wording almost identical to the statute with which we are presently concerned.[5] Daigle v. Great American Indemnity Co., La.App. 1 Cir., 70 So.2d 697.
In the cited case, where the employee's industrial injury and initial disability was acknowledged by the initial payments of compensation and where the defendant's answer expressly denied liability for the compensation benefits sought, and where the court found after a trial upon the merits that the defendant's formal denial of liability and continued refusal to pay compensation benefits was without legal basis, the statutory notice and delay provided by the penalty statute were specifically *713 held by this court not to be pre-requisite to the assessment of penalties for the arbitrary non-payment of compensation liability. We held that the defendant's acknowledgment of the industrial injury by its initial payment of compensation, and its denial of liability by its answer, waived such statutory requirements which might otherwise have been pre-requisite to the imposition of penalties. The defendant's formal and deliberated denial of liability by its answer in the suit indicated that the refusal to pay compensation benefits was not predicated upon the absence of any statutory notice or delay, but instead upon its intention to resist upon the merits the payments of the compensation claimed by the injured employee, thus indicating further notice or delay by the injured employee would be a "useless ceremony". 70 So.2d 704.
Able counsel for the defendant-appellee argues that the notice and delay provisions were designed to protect from penalty an employer's inadvertent good faith non-payment of compensation benefits. It is to be observed that this is not the situation presently before us with regard to non-payment of the compensation benefits for which penalties are being assessed herein. Despite formal judicial demand in December for compensation at the correct weekly rate of $35 and for payment of the $12.75 medical expenses, the defendant employer formally denied liability therefor and failed to pay or even to tender such amounts until after judgment, following trial on the merits, was rendered against him on June 19, 1959even though all the while there was no legal justification whatsoever for his failure or refusal to pay such undoubted compensation liability.

IV.
Under LSA-R.S. 23:1201.2, above, if an arbitrary non-payment of compensation is found, penalties must be allowed of 12% of the difference between the amount tendered and the amount found to be due, together with reasonable attorney's fees.
The defendant employer tendered compensation at the rate of $26 per week, although he was undoubtedly liable for compensation for amputated index finger for 30 weeks at $35 per week. Thus he arbitrarily refused to pay or to tender $270 of compensation, plus $12.75 medical expense, or a total of $282.75. The plaintiff is entitled to penalties of 12% of this amount ($33.93), together with reasonable attorney's fees to the extent that they assisted in the recovery of this portion of the compensation benefits owed to the plaintiff. These fees, under all the circumstances of this case, we fix at $75.
For the foregoing reasons, the trial court judgment is amended so as to additionally award to the plaintiff penalties of $33.93 and attorney's fees of $75 under LSA-R.S. 23:1201.2, and as thus amended, it is affirmed in all other respects.
Amended and affirmed.
NOTES
[1] This enactment provides:

"A. Any employer whose liability for claims arising under the provisions of this Chapter is not covered by insurance, shall pay the amount of any claim due under the provisions of this Chapter, within Sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the employer to a penalty, in addition to the amount of claim due, of 12% of the total amount of such claim, payable to the claimant, together with all reasonable attorney's fees for the prosecution and collection of such claim, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due, and all reasonable attorney's fees for the prosecution and collection of such amount. Any such employer who at any time discontinues payment of claims due and arising under the provisions of this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the penalties set forth above, payable to the claimant, together with all reasonable attorney's fees for the prosecution and collection of such claims. The provisions of R.S. 23:1141 limiting the amount of attorney's fees shall not apply in cases wherein the employer is found liable for penalties and attorney's fees under the provisions of this Section.
"B. The notice required by the provisions of this Section may be given or made by any person claiming to the entitled to compensation, or by any one on his behalf, and shall contain the information and signature required by R.S. 23:1293 and shall be given as required by R.S. 23:1294."
[2] This week's compensation had not been paid immediately following the first week, under the provisions of LSA-R.S. 23:1224: "No compensation shall be paid for the first week after the injury is received; provided, that in cases where disability from injury continues for six weeks or longer after date of the accident, compensation for the first week shall be paid after the first six weeks have elapsed."
[3] In weighing the good faith of the defendant employer, we do not think it amiss to comment that the evidence in the present record shows that approximately six months prior to the present accident, a suit by an earlier employee had specifically demanded wages for compensation based upon a six-day week; nor to comment upon the circumstance that in the present suit the defendant employer had initially resisted the payment of compensation upon the ground that the present plaintiff was employed not by himself, but by a corporation wholly owned by him (a contention that the trial court found to be without merit).
[4] Through perhaps understandable mistake of defendant's able and sincere counsel due to counsel's great familarity with the long-established jurisprudence as it existed prior to the Carrington decision; which decision, however, was rendered approximately two and one half years before the present suit.
[5] LSA-R.S. 22:658 penalizes insurers for the non-payment of compensation "within sixty days after receipt of satisfactory proofs of loss." It is to be seen that the requirement for "written notice" to uninsured employers set forth by LSA-R.S. 23:1201.2 (set forth in full in footnote 1 above) is equivalent to the requirement of "satisfactory proofs of loss" set forth by the former statute applicable to compensation insurers.